Shaun P. Kenney, Esq.
**THE KENNEY LAW FIRM, P.L.C.**
485 South Main Avenue, Building 3
Tucson, Arizona 85701
(520) 884-7575
Arizona State Bar No.: 024439
Pima County Computer No.: 66024
shaun@thekenneylawfirm.com
*Attorney for Respondent*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

BOGDAN RADU,

          Petitioner,

v.

PERSEPHONE JOHNSON SHON,

          Respondent.

CASE No.: CV-20-00246-TUC-RM

RESPONDENT'S VERIFIED ANSWER TO
PETITIONER'S PETITION FOR RETURN
OF CHILDREN TO GERMANY

JURISDICTION

    Persephone Johnson Shon (hereinafter "Respondent"), a citizen of the United States, by and through her attorney undersigned, files her answer to the petition for return of children to Germany (hereinafter simply "petition") filed by Bogdan Radu (hereinafter "Petitioner") as follows:

          I.

    Respondent admits each and every one of the allegations and averments made and contained in Paragraph 1 of the petition and further states and alleges that the implementing legislation on the Hague Convention on the Civil Aspects of International Child Abduction ("the Convention"), was formerly classified to section 11603 of Title

1

1  42, entitled "The Public Health and Welfare," but is now classified under 22 U.S.C. §

2  9003, the International Child Abduction Remedies Act ("ICARA").

3

4  II.

5  Respondent admits in part and denies in part the allegations and averments made

6  and contained in Paragraph II of the petition.   Respondent admits Petitioner is the father

7  of and Respondent is the mother of O.S.R., born in 2013 in the United States and of

8  M.S.R., born in 2016 in Germany, and that both children are citizens of the United States

9  and prior to June 10, 2019 were residents of Germany, and that the parties were married

10 to each other in California, United States in 2011 as generally alleged in Paragraph II of

11 the petition.   Respondent further admits that prior to June 10, 2019, the date when the

12 children returned to the United States in general and Arizona specifically, Germany was

13 the children's "state of habitual residence" within the meaning of the Convention as

14 alleged in Paragraph II of the petition. Respondent further admits that under the laws of

15 Germany, specifically Bürgerliches Gesetzbuch § 1626, German Civil Code Section

16 1626, both parents of a child have joint rights to the custody and control and, further, that

17 Exhibit "1" attached to the petition appears to be an excerpt from the Civil Code as

18 alleged in Paragraph II of the petition. Respondent denies both children are dual citizens

19 of the United States and Romania (underline added) as alleged in Paragraph II of the

20 petition and demands strict proof of same before Petitioner may be entitled to the relief

21 he requests in his petition.   Respondent denies the remaining allegations and averments

22 made and contained in Paragraph II of the petition not expressly admitted herein.

23

24

25

26

2

1

2

**III.**

3           Respondent admits in part and denies in part the allegations and averments made

4   and contained in Paragraph III of the petition.   Respondent admits Petitioner and

5   Respondent were married in the State of California in the United States in 2011 and that

6   the Marriage Certificate attached as Exhibit "2" to the petition, albeit reduced or

7   otherwise minimized for viewing, appears to be a fair and accurate copy of the parties'

8   Marriage Certificate, all as alleged in Paragraph III of the petition.   Respondent further

9   admits their children were born respectively in 2013 in the United States and in 2016 in

10  Germany and that the redacted birth certificates attached as Exhibits "3" and "4" are fair

11  and accurate copies of the parties' minor children's birth certificates, again, as alleged in

12  Paragraph III of the petition.   However, Respondent denies both parents and the children

13  are permanent residents of Germany and demands strict proof of same before Petitioner

14  may be entitled to the relief he requests in his petition.   Respondent denies the remaining

15  allegations and averments made and contained in Paragraph III of the petition not

16  expressly admitted herein.

17

18                                              **IV.**

19

20          Respondent admits in part and denies in part the allegations and averments made

21  and contained in Paragraph IV of the petition.   More specifically, Respondent admits she

22  took the children to Arizona with Petitioner's consent to visit her parents for two months

23  from March 15, 2017 to May 15, 2017 as alleged in Paragraph IV of the petition.

24  Respondent further admits that in 2019 she took the children to Arizona specifically with

25

26

3

1    "Petitioner's consent" and not "Respondent's consent" as generally alleged in the

2    petition, but denies it was to be for only two months with a return date of August 10,

3    2019, as alleged in Paragraph IV of the petition. Respondent further admits the parties

4    minor children did attend kindergarten in Germany and that Exhibit "6" attached to the

5    petition appears to be a letter requesting the parties enroll O.S.R. in Germany in

6    September 2020, all as alleged in Paragraph IV of the petition. Respondent further

7    admits she and the children left Germany on June 10, 2019 as alleged in Paragraph IV of

8    the petition. Respondent denies that she has wrongfully retained the parties' minor

9    children in the United States without Petitioner's consent and that at the time the children

10   left Germany "Petitioner was exercising rights of custody" as alleged in Paragraph IV of

11   the petition and demands strict proof thereof before Petitioner may be entitled to the relief

12

13

14   he requests in his petition. Respondent denies the remaining allegations and averments

15   made and contained in Paragraph IV of the petition not expressly admitted herein.

16

17                                         V.

18

19          Respondent admits in part, denies in part, and lacks sufficient information and

20   knowledge to admit or deny certain of the allegations and averments made and contained

21   in Paragraph V of the petition. More specifically, Respondent admits that on or before

22   August 10, 2019 she sent Petitioner a message stating the children were enrolled in

23   school in Arizona as alleged in Paragraph V of the petition. Respondent further admits

24   the allegation and averment made in Paragraph V of the petition that Petitioner repeatedly

25   attempted to contact Respondent through a variety of means and insisted that the children

26

4

1   be returned to Germany.  However, Respondent states and alleges more specifically that

2   since the date Respondent and the children departed on June 10, 2019, Petitioner was in

3   contact with Respondent, expressing his consent and acquiescence to the minor children's

4   removal to the United States and that he would seek employment and take a job in the

5   United States to be closer to the Respondent and the minor children and, further, that he

6   would relinquish or "sell" his custody rights to the parties' minor children in exchange

7   for money from Respondent and/or her parents.

8

9       Respondent lacks sufficient information and knowledge to admit or deny the

10  allegations and averments made and contained in Paragraph V of the petition that on

11  September 15, 2019 Petitioner made a report with the Tucson Police Department

12  indicating that the children were being wrongfully retained in Arizona and should be

13  returned to Germany and, further, that Exhibit "7" appears to be a redacted police record

14  from the Tucson Police Department and, thus, denies the same.  Respondent further lacks

15  sufficient information and knowledge to admit or deny the allegation and averment made

16  and contained in Paragraph V of the petition that on October 10, 2019 Petitioner

17  contacted the children's school in Tucson, the International School, but was informed that

18  the school would do nothing without an Arizona court order and, further, that on

19  December 19, 2019 Petitioner contacted the F.B.I. seeking assistance in having the

20  parties children returned, and that Petitioner also contacted the American Citizen Services

21  Unit at the U.S. General Consulate in Frankfurt, Germany to report a parental

22  kidnapping, and, thus, denies the same.

5

1  Respondent lacks sufficient information and knowledge to admit or deny the

2  allegations and averments made and contained in Paragraph V of the petition that on

3  January 12, 2020 Petitioner filed a formal application under the Convention with the

4

5  German Federal Government and that the German Central Authority forwarded the

6  alleged application, with pertinent attachments and translations, to the United States State

7  Department, the Central Authority under the Convention and that Exhibit "8" appears to

8  be a copy of such alleged application and, thus, denies the same.

9

10  Respondent admits the allegation and averment made and contained in Paragraph

11  V of the petition that employees with the United States State Department sent

12  Respondent a letter requesting, among other things, the voluntary return of the children to

13  Germany and that Exhibit "9" attached to the petition appears to be a fair and accurate

14  copy of that letter.  Respondent further admits the allegation and averment made and

15  contained in Paragraph V of the petition that Respondent's undersigned attorney

16

17  responded to that letter and that Exhibit "10" appears to be a fair and accurate copy of

18  that letter.  Respondent further states and alleges that Exhibit "10" speaks for itself and

19  that as such Respondent denies the allegation and averment made and contained in

20  Paragraph 10 that she is "declining to return the children without litigation" and further

21  states and alleges that, among other things, the letter attached as Exhibit "10" suggests

22  and recommends the parties attempt to mediate their dispute and proffers the name of a

23  local family law attorney versed in the nuances of the Convention to act as mediator in an

24

25  attempt to resolve their differences without the need of resorting to costly and time-

26

1  consuming litigation.  Without casting aspersions on Petitioners' counsel highly skilled

2  and qualified counsel, Respondent denies the allegation and averment made and

3  contained in Paragraph V that "Petitioner has filed this petition as quickly as reasonably

4

5  possible."  Respondent lacks current information and knowledge to admit the remaining

6  allegations and averments made and contained in Paragraph V of the petition that

7  Petitioner's "counsel has received the application and attachment from the United States

8  State Department on May 29, 2020 and, thus, denies the same.  Respondent denies each

9  and every allegation and averment made and contained in Paragraph V of the petition not

10  expressly admitted herein.

11

12

13  VI.

14  Respondent admits in part, denies in part, and lacks sufficient information and

15  knowledge to admit or deny some of the allegations and averments made and contained

16  in Paragraph VI of the petition.  More specifically, Respondent admits that on September

17  9, 2019, she filed a Petition for Dissolution of Marriage (With Minor Children) and a

18  motion for temporary orders seeking temporary custody of the parties' minor children in

19  the Superior Court of Arizona in Pima County bearing docket and/or case number

20  D20192814 and that service has not been accomplished, all as alleged in Paragraph VI of

21  the petition.  However, Respondent lacks sufficient information and knowledge to admit

22  or deny the remaining allegations and averments made and contained in Paragraph VI of

23  and footnote 1 therein on page 4 of the petition that Petitioner has filed in Germany for

24

25

26  the right to determine the children's residence, in the General Court of Pirmasens Family

1  Division and that such filing bears case number 1 F 189/20 and, thus, denies the same.

2

3                                          VII.

4

5        Respondent admits in part and denies in part the allegations and averments made

6  and contained in Paragraph VI of the petition. More specifically, Respondent admits that

7  under German law Petitioner has a right of custody within the meaning of Articles 3 and

8  5 of the Hague Convention and that Germany was the "state of habitual residence" of the

9  parties' minor children immediately before removal of the parties' minor children on

10  June 10, 2019, all as alleged in Paragraph VII of the petition. Respondent denies the

11  remaining allegations and averments made and contained in Paragraph VII of the petition

12  not expressly admitted herein and demands strict proof thereof before Petitioner may be

13  entitled to the relief he requests in his petition.

14

15  HAGUE CONVENTION REQUIREMENTS AND REMEDIES

16                                         VIII.

17        Respondent admits in part, denies in part and lacks current information and

18  knowledge to admit some of the allegations and averments made and contained in

19  Paragraph VIII of the petition. More specifically, Respondent admits the Convention

20  covers both pre- and post-decree international moves of children so long as one parent

21  continues to reside in the state of habitual residence as alleged in Paragraph VIII of the

22  petition as formerly classified under § 11603(f)(2) of Title 42, entitled "The Public

23  Health and Welfare," but is now classified under 22 U.S.C. § 9003(f)(2). Respondent

24

25

26  denies the allegation and averment made and contained in Paragraph VIII of the petition

1  that "Petitioner continues to reside in Germany . . . ,, the Convention applies" and

2  demands strict proof thereof before Petitioner may be entitled to the relief he requests in

3  his petition.  Respondent lacks current information and knowledge to admit or deny the

4  allegation made parenthetically in Paragraph VIII that "[although [Petitioner] is currently

5  in Romania visiting his parents, unable to currently return to Germany until June 15,

6  2020, because of the COVID-19 restrictions]" and, thus denies the same.

7

8  IX.

9

10  Respondent admits in part and denies in part the allegations and averments made

11  and contained in Paragraph IX of the petition.  More specifically, Respondent admits that

12  since June 10, 2019, she has retained primary physical custody of the parties' minor

13  children in Tucson, Arizona, but denies the allegation, inference or averment that such

14  retention has been "wrongful" from their state of habitual residence within the meaning

15  of Article 3 of the Convention and that she "continues to wrongfully retain them in the

16  United States despite requests by Petition and the United States State Department to have

17  the children returned" as alleged in Paragraph IX of the petition.

18

19  Respondent admits the remaining allegations and averments made and contained

20  in Paragraph IX of the petition not expressly denied herein above.  More specifically,

21  Respondent admits the statements of law set forth in Paragraph IX of the petition appear

22  to be correct with the understanding and/or clarification that all references made therein

23  under § 11603(e)(1) and § 11603(e)(2) of Title 42, entitled "The Public Health and

24  Welfare," are now classified under 22 U.S.C. § 9003(e)(1) and (e)(2).

## X.

1     Respondent admits in part and denies in part the allegations and averments made

2   and contained in Paragraph X of the petition. More specifically, Respondent admits that

3

4   parties minor children are both under the age of sixteen (16) years, that upon proof

5

6   thereof Article 12 of the Convention requires the return of the children to Germany, in the

7   absence of a specific exception and, further, that Article 16 of the Convention bars the

8

9   court from considering the merits of the custody issue unless and until the court

10  determines that the children need not be returned to the state of habitual residence

11  pursuant to the Convention, all as alleged in Paragraph X of the petition. However,

12  Respondent denies that she has "wrongfully retained" the parties' minor children and,

13  further, states she lacks current information and knowledge to admit or deny the

14

15  allegation and averment made in Paragraph X that Petitioner's "action was commenced

16  within one year from the date of [such alleged] wrongful retention" and, thus, denies the

17  same.

18

19

20     Respondent admits in part and denies in part the allegations and averments made

21  and contained in Paragraph XI of the petition. More specifically, Respondent admits the

22  general statement of law made in Paragraph XI of the petition that "42 U.S.C.A.

23  §11607(3) provides that any court ordering the return of a child pursuant to an action

24  brought under §11603 'shall order the respondent to pay necessary expenses incurred by

25

26  or on behalf of the petitioner, including court costs, legal fees, foster home or other care

## XI.

1   during the course of proceedings in the action, and transportation costs related to the

2   return of the child, unless the respondent establishes that such order would be clearly

3   inappropriate" and notes further that all references made therein under §11603 and

4   §11607(3) of Title 42, entitled "The Public Health and Welfare," are now classified under

5   22 U.S.C. §§ 9003 and 9007(3) respectively. However, Respondent denies the allegation

6   and averment made and contained in Paragraph XI of the petition that states, "Therefore,

7   Petitioner is entitled to his reasonable costs and fees related to this matter" and demands

8   strict proof thereof before Petitioner may be entitled to the relief he requests in his

9   petition.

10

11

12  AFFIRMATIVE DEFENSES

13      By way of affirmative defenses and matters of avoidance herein, Respondent

14  alleges and states as follows:

15

16                              XII.

17      The Convention covers both pre- and post-decree international moves of children

18  so long as one parent continues to reside in the state of habitual residence.  See also 42

19  U.S.C. §11603(f), now classified under 22 U.S.C. §9003(f).  Petitioner left "the state of

20  habitual residence" on or about November 19, 2019 when he moved out and returned the

21  key to the parties' former residence in Merzalben, Germany to the dwelling owners Hans

22  and Ingeborg Frick.   On November 23, 2019, Ingeborg Frick informed "the local

23  authorities" that Petitioner moved out and on December 11, 2019, "the local authorities"

24  called Ingeborg Frick and said that Petitioner "did not unregister and would therefore be

25

26

11

1   officially unregistered on December 11, 2019" (see "Address Verification 1" and

2   "Address Verification 2" attached hereto as Exhibit "A" incorporated by reference

3   herein). Since Petitioner left Merzalben, Germany on November 19, 2019 and does not

4

5   continue to reside in "the state of habitual residence" in Germany, the Convention does

6   not apply.

7

8                        XIII.

9

10          Article 12 of the Convention establishes the "well-settled" defense wherein it

11   states, "The judicial or administrative authority, even where the proceedings have been

12   commenced after the expiration of the period of one year referred to in the preceding

13   paragraph, shall also order the return of the child, unless it is demonstrated that the child

14   is now settled in its new environment." See Hague Convention, art. 12. Respondent left

15   Frankfurt, Germany with the parties' minor children on June 10, 2019 at 3:30 p.m. on a

16   Condor airlines flight (see Condor Airline Booking Confirmation Invoice attached hereto

17   as Exhibit "B" incorporated by reference herein). The current matter was allegedly filed

18   with the U.S. District Court in Tucson, Arizona on June 8, 2020, which, because of the

19   "leap day" in 2020 was the 364th day after the Respondent left with the parties' minor

20   children. However, because of the nine (9) hour time zone difference, Respondent

21   contends it was after "the expiration of the period of one year" or more hours from that

22   date and time. The children are well-settled in the Tucson metropolitan area.

23   Respondent resides with her parents, Dr. Brian Shon and Dr. Janet Johnson, and has since

24   she and the minor children came to Tucson, Arizona on June 10, 2019. The children's

25

26

1   residence in the allegedly "new environment" is stable; both

2   children attend school consistently at the International School in Tucson since they began

3   enrollment there in August 2019 and are doing well in school; both children attend

4

5   church regularly at the Lutheran Church of the Foothills (see letter of July 7, 2020 from

6   Rev. John Lille attached hereto as Exhibit "C" incorporated by reference herein);

7   Respondent has stable full-time employment with the Finance Department of Pima

8

9   County, Tucson, Arizona, and both children have many friends and relatives in the

10  Tucson, Arizona metropolitan area. Due to the fact both children are well-settled in the

11  Tucson, Arizona metropolitan area, Petitioner's request to return the parties' minor

12

13  children to Germany can and should be denied.

14

15          Article 13 of the Hague Convention establishes two (2) more applicable

16  affirmative defenses: (1) the consent or acquiescence defense, which involves the

17  petitioner's consent to or acquiescence in the removal or retention of the child(ren); and

18

19  (2) the grave risk defense, which arises when the respondent contends that returning the

20  child(ren) would place the child(ren) at grave risk of physical or psychological harm or

21  otherwise place the child(ren) in an intolerable situation.  See Hague Convention, art.

22  13(a) and (b).

23

24                                      XV.

25          Beginning with the birth of O.S.R. in October, 2013, Petitioner's behavior toward

26  Respondent and O.S.R. in particular deteriorated.  There is a significant history of

1  physical and emotional abuse, assault and domestic violence behaviors by Bogdan Radu

2  directed toward Respondent and O.S.R.; angry and uncontrolled outbursts by Bogdan

3  Radu in front of and toward Respondent and both children; expressions of and

4  manifestations of serious physical harm toward Respondent and both children and, in

5  particular, toward O.S.R. resulting in serious personal and emotional harm and injury to

6

7  Respondent and both children beginning in 2013 and culminating in May, 2019.

8

9                                            XVI.

10           After another in an endless series of abusive and assaultive behaviors by Petitioner

11  toward Respondent and the parties' minor children on March 25, 2018 and again when

12  Petitioner struck O.S.R. on May 27, 2018, Respondent sought help in getting away from

13  Petitioner with the parties' minor children.  She contacted her friend in Germany, Erin

14  Anderson, who advises Respondent to leave the marriage due to the physical, mental and

15  emotional abuse by Petitioner.  On May 27, 2018, Erin Anderson and her husband Kyle

16  promise to aid and assist Respondent and keep Respondent and the children safe if

17  Petitioner strikes Respondent or the children again.  Petitioner's abusive, assaultive, and

18  violent behaviors toward Respondent and the parties' minor children and O.S.R. in

19  particular continue through the summer and fall of 2018.

20

21                                           XVII.

22           On October 4, 2018, the parties' landlord, Ingeborg Frick, tells Respondent she

23  needs to move as soon as possible because of the domestic violence and assaultive

24  behaviors of Petitioner she hears directed toward Respondent and the parties' minor

1    children.   Ingeborg Frick tells Respondent she is afraid of Petitioner and will not deal

2    with him any more even though she loves and adores Respondent and the parties'

3    children.   Respondent tells Petitioner they have been ordered to move by their landlord

4    and Petitioner starts cussing and berating Respondent in front of the children and

5    demands to know how Respondent "is going to fix this" and when is Respondent "going

6    to get a job."   Respondent tries to take the next step to leave the marriage with the

7    children but lacks the courage and confidence to do so.   Petitioner's aberrant, assaultive

8    and abusive behaviors toward Respondent and the parties' minor children continue

9    throughout the months of October, November and December of 2018.

10

11                                   XVIII.

12        On December 12, 2018, M.S.R. vomits in the car ride home.   Petitioner yells at

13   Respondent and the children and O.S.R. in particular because O.S.R. "asked for chocolate

14   from his Advent calendar first instead of saying hello" to Petitioner.   Petitioner continued

15   to yell at M.S.R. because M.S.R. wanted to be comforted after vomiting in the car.

16   M.S.R. has vomited all over himself and Respondent and Petitioner continues yelling and

17   screaming at Respondent "for not being able to stop [M.S.R.] from vomiting, giving the

18   children too many sweets, and for not being able to carry a car seat and an upset M.S.R.

19   up the stairs at the same time."   Respondent brought M.S.R. in the apartment and then left

20   to retrieve his car seat with vomit on it.   Petitioner failed to help and, instead, yells he is

21   "done" and tells Respondent to immediately leave to go back to Tucson, Arizona.

22   /////

23

24

25

26

## XIX.

1

2

3        On December 15, 2018, before going on a family outing, Respondent tells both

4    boys to use the bathroom. M.S.R. does not want to, so Respondent takes M.S.R. into the

5    bathroom crying and helps him use the bathroom.  Respondent finally gets M.S.R. to

6    calm down, until Petitioner bangs his whole arm/hand against the door causing the door

7    to shutter under the force.  As Petitioner keeps banging on the door, he screams at the top

8    of his lungs Respondent "better get [M.S.R.] to stop crying and to unlock the door;"

9

10    Petitioner tries to force the bathroom door open and screams and cusses about how

11    Respondent is "the worse mother" that she is "doing a horrible job raising our children."

12    Petitioner yells Respondent better "unlock the door or else [he] will knock the door

13    down."  Respondent waits for Petitioner to move away from the bathroom door and she

14    unlocks it clutching M.S.R. next to her.  Respondent finds O.S.R. in the kitchen who

15

16    "looks as white as a sheet shaking, crying, with his hands over his ears."  Respondent

17    takes both children to her bedroom and locks the door.  Respondent calms them down

18    and contacts friends to find a safe place to go.  A few hours later, she unlocks the

19    bedroom door and feeds the children.  Petitioner sees Respondent packing a suitcase and

20

21    is says he is "confused why we are leaving" and says that if she leaves him right then and

22    there he would commit suicide.  Respondent leaves with the parties minor children for

23    four (4) nights and upon their return, Petitioner alleges he does not remember what he did

24    or said.

25

26    /////

16

XX.

1
2
3      On or before March 15, 2019, Petitioner is going to Ramstein to rent business

4      space but wants to have sexual intercourse with Respondent before going. Respondent

5      tells him "no" while she is getting dressed and tells Petitioner to stop because they "will

6      be late." Petitioner does not listen and keeps insisting on having sexual congress with

7      Respondent. Respondent asks Petitioner to "please stop" but he pushes Respondent

8      against the wardrobe door, pinning her arms with his hands, pushing his body against

9      Respondent forcing her to engage in sexual intercourse. Respondent tries to move from

10     Petitioner's grasp but cannot. Again, Respondent tells Petitioner to please stop, but

11     Petitioner refuses to listen and keeps trying to sexually assault and rape Respondent.

12     While Respondent says "it felt like forever has gone by even though it may have been a

13     few minutes" Petitioner eventually stops forcing himself on Respondent and yells at

14     Respondent that because she does not want him sexually, he tells her she is not to go with

15     him to Ramstein. Petitioner leaves slamming the door. Respondent calls her friend who

16     tells Respondent to "stay on the phone while she tries to calm herself down" and

17     Petitioner continues to coax Respondent to come "out of the apartment to go with him to

18     Ramstein by text."

19
20                            XXI.

21
22     During the month of March, 2019, Respondent attempts to obtain a passport for

23     the parties' minor children as necessary to leave Germany and the marriage to return to

24
25     Tucson, Arizona. Also during the month of March, 2019, Petitioner suspends

26

17

1  Respondent's access to the parties' bank accounts and controls when and how much she

2  may have access to as necessary to buy groceries. Also during this period of time, the

3  parties no longer have access to a properly licensed and operating motor vehicle and must

4

5  rely upon assistance from friends in the area to get groceries. Again, during March and

6  April, 2019, Respondent seeks help in obtaining anger management and mental health

7  counseling, especially for Petitioner's P.T.S.D. On April 16, 2019, Petitioner admits he

8  has anger management and serious mental health problems and tells Respondent he is

9  ready to address them, but that "it needs to be a free service." Unable to find free mental

10

11  health counseling services for Petitioner, Respondent tells Erin Anderson the parties'

12  marriage is over and that Petitioner wants Respondent to leave with the children and to

13  return to Tucson, Arizona "because [she] does not want him sexually." The only way

14  Respondent will stay is if Petitioner agrees to address his anger management and mental

15

16  health issues, but Petitioner further demands Respondent have sexual intercourse with

17  him, which Respondent says she will no longer do. Petitioner reminds Respondent of

18  their wedding vows and promises he "will get happy once [his] business makes it."

19

20                                    XXII.

21        On April 24, 2019, Respondent tells Petitioner she is going to leave the marriage

22  and Germany for Tucson, Arizona with the children at the end of the month. Petitioner

23  knows Respondent is going home to Tucson, Arizona and tells her he will leave it open

24  for her to come back if she decides. The marriage continues to deteriorate as Petitioner's

25  assaultive, abusive, and threatening behaviors continue. On May 8, 2019, Respondent

26

18

1   contacts her sister, Melanie Shon Kuhlman, and tells her "things are bad here." Petitioner

2   Bogdan Radu again tells Respondent that she and both children "need to leave or that

3   [she has] to buy a car for them and start working because [she] has not worked the last

4   seven (7) years of the marriage. Petitioner again yells and berates Respondent in front of

5   the children telling her that "everything in [his] life was perfect until [he] met [her] and

6   since being married to [her] that's when everything went wrong." Respondent and her

7   sister look into flight to Tucson, Arizona from Frankfurt, Germany for Respondent and

8   the two (2) children.

9

10

11                              XXIII.

12       On or about May 28, 2019, Respondent purchases one-way airline tickets for she

13   and the parties' two (2) minor children to return to Tucson, Arizona via Frankfurt,

14   Germany on Condor Airlines with the financial help and assistance of her father, Dr.

15   Brian Shon. On May 29, 2019, Petitioner realizes the airline tickets are for one-way

16   travel for Respondent and the parties' two (2) minor children and begins to yell and

17   berate Respondent again in front of the children. Respondent knows Petitioner's

18   threatening, abusive and assaultive moods. The minor children, and especially O.S.R.,

19   are suffering from Petitioner's angry and abusive behaviors. Respondent remains silent

20   only speaking up when Petitioner directs his words and actions toward the children to

21   defend them. Petitioner continues berating Respondent saying terrible things about her,

22   her family and her friends. Respondent does not antagonize Petitioner and remains afraid

23   for her personal safety.

24

25

26

19

XXIV.

Respondent leaves Frankfurt, Germany for Tucson, Arizona on June 10, 2019 with

1

2

3  O.S.R. and M.S.R.  During June and July 2019 Respondent attempts to contact Petitioner

4

5  by telephone numerous times.  On July 11, 2019 Petitioner tells Respondent he is

6  planning on leaving Germany for Romania.  On July 13 to 16, 2019, Petitioner tells

7  Respondent that "if [she] comes back, [she] must start working right away earning a

8  minimum of $1,000.00 a month in order to cover [her] lifestyle and living expenses."

9

10  Petitioner tells Respondent she is "to blame for no money being saved over the last three

11  (3) years."  Respondent asks Petitioner, "what happens if [she] can't make that $ every

12  month and whether Petitioner will step up and watch the kids."  Petitioner tells

13  Respondent "failure is not an option" and that she has "to start working to support her

14  spending habits."  Respondent says she did not ever plan on failing but that if she cannot

15  "make the quota" Petitioner is demanding she make "then what happens?"  Respondent

16

17  tries to explain to Petitioner that her "spending habits have been to support [their]

18  family" and the volunteer work she undertook during the marriage was to help her career

19  and training as a doula.  Petitioner tells Respondent "we're in a shithole with money b/c

20  of [her] volunteer activities."  Petitioner tells Respondent "If you come back, [she] must

21  have $12,000 to sustain herself for next 12 months or earn a minimum of $1000 every

22  month and recommit [herself] 100% to this marriage and [their] children" and "not

23

24  commit [any] more to strangers, toxic family, or friends …."

25

26  /////

XXX.

1

2     On July 19 and 20, 2019, Petitioner tells Respondent a metaphoric story of his

3

4     viewpoint of "four (4) lions (the Radu/Shon family), especially the lioness (Respondent)

5     being harassed and confronted by five (5) hyenas.   Petitioner explains the hyenas are

6     Respondent's mom, sister, Aunt Cynthia, doula friend Launa, and another friend known

7     as Jan. Petitioner says "the hyenas are trying to turn [Respondent] into a hyena and their

8     two (2) kids into hyena cubs utilizing the 'feminazi ideology.'"   Respondent tells

9

10    Petitioner everything he says is untrue and lies. Respondent tells Petitioner, "I can't live

11    w/someone who constantly tells me I'm not good enough, I'm fat, I'm slow, I will never

12    succeed, who hates everything about where I'm from and my family without knowing

13    them. How can I live like this? Under attack and stress all the time? How can I be a

14    strong and good mama to my children when I feel this way? You keep spewing toxic lies

15    that are not good for anyone."   Petitioner continues to harass, threaten and intimidate

16    Respondent during the months of August, September and October, 2019.   Respondent

17    seeks counseling from Emerge Center Against Domestic Abuse and Sherri Mikels-

18

19    Romero,   LCSW   to   address   the   abusive,   threatening   and   assaultive   behaviors   of

20    Petitioner. (see letter of July 10, 2020 from Emerge and letter of July 6, 2020 from Sherri

21    Mikels-Romero, LCSW, PLLC attached hereto as Exhibits "D" and "E" respectively and

22    incorporated   by   reference   herein).     Furthermore,   Petitioner   demands   monetary

23    compensation to surrender his custodial rights and attempts to extort Respondent and her

24

25    parents by threatening to have them arrested for international kidnapping and child

26

21

1  slavery.

2

3  XXVI.

4

5     As shown in detail herein above, not only did Petitioner consent and acquiesce in

6  the removal or retention of the children from Germany, but demanded Respondent and

7  the minor children leave on numerous occasions during the fall and winter of 2018 and

8  into the spring of 2019. Additionally, Respondent contends that returning the children to

9  Germany will place the children at grave risk of physical or psychological harm or

10  otherwise place the children in an intolerable situation. See Hague Convention, art. 13(a)

11  and 13(b). Finally, as noted herein above, Petitioner's claim(s) for relief are barred by

12  the doctrines of "laches" due to his failure to timely file his petition and, further,

13  equitable estoppel in pais due to his aberrant, assaultive, threatening and violent

14

15  behaviors toward Respondent and the minor children O.S.R. and M.S.R.

16     WHEREFORE having fully answered and affirmatively defended the allegations

17  and averments made and contained in Petitioner's petition, Respondent requests that this

18  Court deny Petitioner's request to return the children or allow Petitioner to return the

19

20  children to Germany forthwith. Furthermore, Respondent requests that the Court deny

21  Petitioner's request for an award for his attorney's fees, court costs, and all necessary

22  recoverable expenses made therein and for such other and further relief as the Court

23  deems just and proper under the circumstances.

24  Date: July 22, 2020

25                                THE KENNEY LAW FIRM, P.L.C.

26

                              By:  s/ Shaun P. Kenney
                                   Shaun P. Kenney Bar No.: 024439

22

## VERIFICATION

1

2  PURSUANT TO 28 U.S.C.A § 1746, I DECLARE UNDER THE PENALTY OF

3  PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.  EXECUTED ON

4

5  JULY 22, 2020.

6

7  _Persephone Johnson Shon_

8  PERSEPHONE JOHNSON SHON
   Respondent

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# EXHIBIT A

24

**Verbandsgemeindeverwaltung Rodalben**

Verbandsangehörige Gemeinden: Clausen, Donsieders, Leimen, Merzalben, Münchweiler a. d. Rodalb, Rodalben

# im Gräfensteiner Land

---

Verbandsgemeinde Rodalben, Am Rathaus 9, 66976 Rodalben

Frau
Ingeborg Frick-Wilden
Höhstraße 12
66978 Merzalben

| | |
|---|---|
| Verbandsgemeinde Rodalben | |
| Am Rathaus 9, 66976 Rodalben | |
| Telefon: | (06331) 234-0 |
| Telefax: | (06331) 234-105 |
| E-Mail: | meldeamt-bud@wen.de |

**Öffnungszeiten:**
Montag und Dienstag:      8.30 – 12:00 und 14:00 – 16:00 Uhr
Donnerstag:                      8:30 – 12:00 und 14:00 – 18:00 Uhr
Mittwoch und Freitag:       8:30 – 12:00 Uhr

| | |
|---|---|
| Bearbeiter/in: | Frau Monika Ernst |
| Durchwahl: | 06331-234142 |
| E-Mail: | monika.ernst@rodalben.de |
| Datum: | 07.07.2020 |

| Ihr Zeichen | Ihr Schreiben vom |
|---|---|
| | |

## Einfache Melderegisterauskunft

In Beantwortung Ihrer Anfrage  teilen wir Ihnen mit, dass

**Radu, Bogdan**
Gebräuchlicher Vorname:     Bogdan

nach

**unbekannt**

verzogen ist.

Die Daten beruhen auf dem Kenntnisstand der Meldebehörde zum Zeitpunkt der Auskunftserteilung.

Wir weisen Sie vorsorglich auf Ihre Informationspflicht nach Artikel 14 der Verordnung (EU) 2016/679 in der
jeweils gültigen Fassung unter Berücksichtigung des Ausnahmetatbestands nach § 44 Abs. 5 BMG in Verbindung
mit § 45 Absatz 2 BMG hin! Somit ist die betroffene Person durch den Empfänger der Melderegisterauskunft über
das Auskunftsersuchen zu informieren, sofern dadurch nicht ein berechtigtes Interesse des Empfängers,
insbesondere die Geltendmachung von Rechtsansprüchen, beeinträchtigt wird.

Bemerkung:              Herr Radu Bogdan wurde zum 21.11.2019 v.A.wg. abgemeldet aufgrund
                             der Auszugsmitteilung vom Hauseigentümer.

Mit freundlichen Grüßen
Im Auftrag

Ernst

Bankverbindungen der Verbandsgemeindekasse Rodalben:
Gläubiger ID:                      DE51222000000074226
Sparkasse Südwestpfalz Pirmasens    IBAN DE59 5425 0010 0040 0000 36    MALADE51SWP
VR-Bank Südwestpfalz eG Rodalben    IBAN DE78 5426 1700 0000 0050 53    GENODE51ROA
Datenschutz:
Informationen zur Verwendung Ihrer Daten finden Sie im Internet unter www.rodalben.de/datenschutz

**Translation Services USA LLC**

121 Newark Ave., 3rd Floor, Jersey City, NJ 07302

Phone: (800) 790-3680, Fax: (212) 537-6674

*Translated from German*

**Municipality Administration of Rodalben**

Municipality Districts: Clausen, Donsieders, Leimen, Merzalben, Muenchweiler an der Rodalb, Rodalben
In Graefenstein Land

Municipality of Rodalben, Am Rathaus 9, 66976 Rodalben

| | Municipality of Rodalben |
| --- | --- |
| | Am Rathaus 9, 66976 Rodalben |

Ms.
Ingeborg Frick-Wilden
Hochstrasse 12
66975 Merzalben

Telephone: (06331) 234-0
Fax: (06331) 234-105
Email: medteam@rodalben.de

Office Hours:
Mon, Tues: 8:30-12:00 and 2:00-4:00
Thurs: 8:30-12:00 and 2:00-6:00
Wed, Fri: 8:30-12:00

Agent: Ms. Monika Ernst
Extension: 06331-23142
Email: monika.ernst@rodalben.de

Your file                                          Our letter dated                                          Date: July 7, 2020

**Simple Registration Information**

In response to your request, we inform you that

**Radu, Bogdan**
common first name: Bogdan

does not have a known address.

The data refers to the state of the knowledge of the registry office at the point in time of this letter. We inform you as a precaution pursuant to article 14 of the ordinance (EU) 2016/679 in its respective version under consideration of the cases of exception pursuant to § 44 para. 5 BMG (Federal Registration Laws) in connection with § 45 para. 2 BMG! Therefore, the concerned person is to inform the registry office information desk about information searches by the addressee so that the legal rights of the addresses, in particular the enforcement of legal claims, are not hindered.

Comments: Mr. Radu Bogdan was unregistered on November 21, 2019 based on the notification of moving out from the homeowner.

Sincerely,
By proxy
[signature]
Ernst

Bank information of the Municipality Administration of Rodalben:
Creditor ID:                                          DE51ZZZ00000074226
Sparkasse Suedwestpfalz Pirmasens          IBAN DE59 5425 0010 0040 0000 36 MALADE51SWP
VR-Bank Suedwestpfalz EG Rodalben          IBAN DE76 5426 1700 0000 0050 53 GENODE61ROA
Data Protection:
Information of the use of data can be found at www.rodalben.de/datenschutz.

**Translation Services USA LLC**

121 Newark Avenue, 3rd Floor, Jersey City, NJ 07302
Phone: (800) 790-3680, Fax: (212) 537-6674

## Translation Certification

Translation of "**Legal Document**" from _____ **German** _____ to _____ **English** _____ language

We, Translation Services USA, LLC, a professional translation company, hereby certify that the above-mentioned document has been translated by an experienced and qualified professional translator and that, in our best judgment, the translated texts truly reflects the content, meaning, and style of the original text and constitutes in every respect a correct and true translation of the original document.

This is to certify the correctness of the translation only. We do not guarantee that the original is a genuine document, or that the statements contained in the original document are true. Further, Translation Services USA LLC assumes no liability for the way in which the translation is used by the customer or any third party, including end users of the translation.

A copy of the translation is attached to this certification.

Kavita Ramgahan, Project Coordinator
Translation Services USA LLC
Dated: July 14, 2020

Notarization:

Sworn and subscribed before me this date July 14, 2020

(Notary Public) , Jersey City, New Jersey

ELIZABETH C. BERSCH
NOTARY PUBLIC OF NEW JERSEY
ID # 50033135
My Commission Expires 2/24/2021

The Kenney Law Firm Mail - Fwd: Ingeborg und Roland Frick Merzalben Tel 004963956206



Shaun P. Kenney <shaun@thekenneylawfirm.com>

## Fwd: Ingeborg und Roland Frick Merzalben Tel 004963956206

1 message

**Persephone Shon** <chunkstermomma@gmail.com>
To: Shaun Kenney Law Firm <shaun@thekenneylawfirm.com>

Wed, Jul 8, 2020 at 8:14 AM

Hello Shaun.

Here's the email from Inge Frick my German landlord. Thanks.

Cheers,
Persephone

---------- Forwarded message ----------
From: **Hans Roland Frick** <frick.vuv@gmail.com>
Date: Mon, Jul 6, 2020, 5:30 AM
Subject: Ingeborg und Roland Frick Merzalben Tel 004963956206
To: <chunkstermomma@gmail.com>

Hallo Persephone, Radu hat mir am 19.11.2019 eine SMS geschickt, dass er ausgezogen ist. Schlüssel lad im Briefkasten Am 23.11.2019 habe ich der Verbandsgemeind dass er ausgezogen ist. am 11.12 2019 hat die Verbandsgemeinde mich angerufen und gesagt:Rado hat sich nicht umgemeldet und deshalb wurde er am 11.12.2019 amtlich abgemeldet. Viele Grüsse aus Merzalben Ingeborg Frick

**Translation Services USA LLC**

121 Newark Ave., 3rd Floor, Jersey City, NJ 07302

Phone: (800) 790-3680, Fax: (212) 537-6674

*Translated from German*

July 12, 2020                    Gmail – Ingeborg und Roland Frick Merzalben Tel: 004963956206

Gmail

# Ingebord und Roland Frick Merzalben Tel: 004963956206

**Hans Roland Frick** <frick.vuv@gmail.com>                    Monday, July 6, 2020 at 2:30 PM
To: chunkstersmomma@gmail.com

Hi Persephone,

Radu sent me a text message on November 19, 2019 that he moved out. They key was in the mailbox. On November 23, 2019, I informed the local authorities that he moved out. On December 11, 2019, the local authorities called me and said that Rado [Radu] did not unregister and would therefore be officially unregistered on December 11, 2019.

Best regards from Merzalben,
Ingeborg Frick

**Translation Services USA LLC**

121 Newark Avenue, 3rd Floor, Jersey City, NJ 07302

Phone: (800) 790-3680, Fax: (212) 537-6674

## Translation Certification

Translation of "Legal Document" from _____ German _____ to _____ English _____ language

We, Translation Services USA, LLC, a professional translation company, hereby certify that the above-mentioned document has been translated by an experienced and qualified professional translator and that, in our best judgment, the translated texts truly reflects the content, meaning, and style of the original text and constitutes in every respect a correct and true translation of the original document.

This is to certify the correctness of the translation only. We do not guarantee that the original is a genuine document, or that the statements contained in the original document are true. Further, Translation Services USA LLC assumes no liability for the way in which the translation is used by the customer or any third party, including end users of the translation.

A copy of the translation is attached to this certification.



ELIZABETH C. BERSCH
NOTARY PUBLIC OF NEW JERSEY
ID # 50033135
My Commission Expires 2/24/2021

_Kavita Ramgahan_
Kavita Ramgahan, Project Coordinator
Translation Services USA LLC
Dated: July 14, 2020

Notarization:

Sworn and subscribed before me this date July 14, 2020

_Elizabeth Bersch_
(Notary Public) _____, Jersey City, New Jersey

**Translation Services USA LLC**

121 Newark Avenue, 3rd Floor, Jersey City, NJ 07302
Phone: (800) 790-3680, Fax: (212) 537-6674

*Translated from German*

I, Carrie Stumpf, certify that I am fluent (conversant) in the English and German languages, and that the above/attached document is an accurate translation of the document attached entitled 'Address Verification I and Address Verification II.'

Signature: *Carrie Stumpf*

Date: July 13, 2020
Typed Name: Carrie Stumpf

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# EXHIBIT B

25





Condor

Part of the Thomas Cook Group

CONDOR FLUGDIENST GMBH
Thomas-Cook-Platz 1
D - 61440 Oberursel
Tel. +1 866 960 7915

MS
PERSEPHONE SHON

HOEHSTRASSE 14A
D-66978 MERZALBEN

| | | | |
|---|---|---|---|
| conf. date | 28.05.2019 | agency no. | 50065 | booking ref. 80482270-02 |

| adu. | chd. | inf. | | departure | return |
|---|---|---|---|---|---|
| 1 | 2 | 0 | | 10.06.19 | |

## Booking-Confirmation (Internet) / INVOICE

| pos | title | name | age | remark | amount |
|---|---|---|---|---|---|
| 1 | Ms | SHON/PERSEPHONE | | | |
| | | | | Taxes, fees and other surcharges | 506.45 |
| | | | | in total | 133.54 |
| | | | | Seat reservation 09D | 0.00 |
| | | | | 2nd Baggage item 23kg | 95.00 |
| | | | | FK: WJ5EME | |
| 2 | Chd. | R /O | | | |
| | | | | Taxes, fees and other surcharges | 506.45 |
| | | | | in total | 133.54 |
| | | | | Seat reservation 09E | 0.00 |
| 3 | Chd. | R /M | | | |
| | | | | Taxes, fees and other surcharges | 506.45 |
| | | | | in total | 133.54 |
| | | | | Seat reservation 09G | 0.00 |

total amount USD   2,014.97

## Details of Taxes, fees and other surcharges

| Travellers | Taxes, fees and other surcharges per traveller in detail | |
|---|---|---|
| 1-3 | 133.54 USD | DE EUR 9.50 OY EUR 41.49 RA EUR 33.56 US USD 18.30 XA USD 3.96 XY USD 7.00 YC USD 5.77 YR EUR 3.51 |

| Passenger | Service |
|---|---|
| 1-3 | on  10.06.19 | FRANKFURT INT. - PHOENIX Y  DE 2026 15:30 - 18:35 (12:05h) SPO = Classic Premium Class |

baggage incl.: 1 PC á 32 kg
Carry-on baggage: 1 piece total 10 kg
Flyekey: WJ5EME

Secure Flight details need to be provided
before departure.
Note: It is necessary to present a return/on-
going ticket or the relevant residence permit.
Otherwise entry is not possible.

## ***NOTE - YOUR BOOKING REFERENCE IS 8048270-02 ***

Classic: Please note the special cancellation and rebooking conditions.

Schedule and routing subject to change without notice.

Booked by  Persephone Shon on 28.05.19 through Internet.

Your customer number is: 12417707

Payment by Credit Card.

All fares include a small bag (max. dimensions 40x30x10cm).

It depends on your booked fare whether additional, bigger hand baggage (55x40x20cm) is included.

Economy Light Short- and Medium Haul: -

Economy Light Long Haul: +1x hand baggage (55x40x20cm), in total max. 8kg

Economy Classic: +1x hand baggage (55x40x20cm), in total max. 8kg

Premium Class/Economy PLUS: +1x hand baggage (55x40x20cm), in total max. 10kg

Business Class: +2x hand baggage (55x40x20cm), in total max. 16kg (1 piece may not exceed 10kg)

Please note: Infants below the age of 2 are not entitled to bring their own hand baggage.
For flights to/from USA and Canada, a free baggage allowance of one item weighing up to 23kg applies
in Economy class (except LIGHT tariff), or 32 kg in Premium Economy class. In Business class, 2
baggage items weighing up to 32kg per item will be carried without charge. Infants under age 2 have a
free baggage allowance of one item weighing up to 10kg in Economy class (except LIGHT tariff), also in
Premium Economy class and Business class. The LIGHT tariff does not normally include any free
baggage allowance.

Important! It is essential to find out about the important entry and transit requirements for the USA (incl.
Puerto Rico) and/or Canada, as if you do not register for the ESTA and/or eTA and (TSA) Secure Flight
programs, you will be refused entry to the USA / to Canada (and also transit through USA/Canada).
For further information please go to condor.com / Flight Preparation / Entry Regulations and Customs.

You will be asked for your Secure Flight data (title/gender, first name, surname, date of birth, Redress
Number* if available) when you make your booking through condor.com and the data will be
automatically be forwarded to the authorities in the USA. In this case, there is then no requirement for
the data to be recorded separately.

If you did not provide this information when you made your booking, please do so as quickly as
possible, and ideally right after you book your flight on condor.com / My booking.

When registering the electronic travel application ESTA and/or eTA with a German passport, it is

important to ensure that the letters "O" and "I" are not used in German Passports. In case of doubt, it is a zero (0) or an one (1).

+++

The shown prices are only valid for the current booking process and may vary if you add extra luggage later on. Here you will find all information concerning hand baggage,  checked in baggage, sports equipment and special cargo: www.condor.com/eu/flight-preparation/baggage-and-animals/baggage.jsp

## Important information concerning your outward flight

CHECK-IN: Terminal 1, Hall C

CLOSING DATE: You are reminded that the following closing dates for check-in: long-hauls (from 6 hour flights on): 60 minutes prior to departure, Short-/Middle-hauls: 45 minutes prior to departure. We ask you to have finished your check-in procedure at these times and of being in possession of your boarding-card. Principally we recommend to be at the check-in 2 hours prior to departure (for flights into the USA and Canada 3 hours).

AUTOMATED check-in: use the convenient automated check-in kiosks found throughout the airport for all departures. Then hand your baggage over at the Baggage Drop-off You can use the check-in kiosks at the day of travel up to 1 hour prior departure. Please make sure that your baggage has been accepted at the Baggage Drop-off counter latest 60 minutes prior departure.

ONLINE check-in: you may use our online check-in from 24 to 2 hours before scheduled departure. Please use the baggage drop-of desks at the airport for your hold baggage and then hand in your luggage until late. 60 minutes before departure at the so-called baggage drop- off at the airport. Online check-in is not available for GROUPS.

FLIGHT-RECONFIRMATION: You can check your flight times starting 48 hours before your flight on the internet at www.condor.com. You will find all the important information on your flight under the menu item Flight info - Departures and Arrivals. The General Terms and Conditions apply and can be viewed online at http://www.condor.com/de/hilfe-kontakt/agb.jsp

**Special note for ticketless travel TKNE/NOTIX: At the Check-in, please** have at hand this booking itinerary and a valid passport/personal identification card for all passengers, including children and infants. If you have booked a feeder with one of our partner-airlines an electronic-ticket will be issued for this flight. Please check and observe the visa and entry requirements for the country of destination and any transit countries!! Check-in deadline: The passenger strictly needs to observe the dead- line of 120 minutes on all outbound and inbound flights (180 minutes on flights to the U.S. and Canada). If the passenger has not reported to the Check-in within this time, the airline is authorized to alternatively dispose of the seat. Please be aware that more restrictive security measures concerning hand luggage on flights to and from the USA are in place. Please inform yourself by your Travel Agent or on our website WWW.CONDOR.COM.

The published flight times can to a reasonable extent be subject to changes for flight operating reasons. Condor will endeavour to keep changes in flight times to a minimum and inform all passengers of them as early as possible.

Free baggage allowance: The free baggage allowance specified above is per person, not per seat.

**Liability:**

Liability is governed by the Montreal Convention of 28 May 1999 and the Warsaw Convention of 12 October 1929 or as amended at The Hague in 1955. These conventions limit liability for damage to baggage, loss of luggage or delayed arrival of baggage (maximum of 1,131 SDRs/approx. EUR 1,332) as well as for delays (maximum of 4,694 SDRs/approx. EUR 5,528). If the value of your baggage exceeds the above stated amount, you should ensure that it is covered by other insurance prior to

departure. There is no limitation on the liability of EU airlines for death or bodily injury. In the event a passenger suffers a loss of up to 113,100 special drawing rights (SDRs), or approx. EUR 133,200, it cannot be proven that the party suffering the loss was partially or completely at fault for causing the damage. If you have plans to use a different airline as your carrier during your journey, their limits of liability shall apply.

**The general terms and conditions for transportation can be viewed at** www.condor.com, by your Travel Agent or at any Thomas Cook Service desk.

Legal notes regarding taxes:
service according to Par. 25 UStG (German Sales Tax Code)
Cross-border passenger transportation according to Par. 26,3 UStG (German Sales Tax Code).
Tax no.: 003 246 44120

Prices for purely German domestic flights include 19% VAT

Taxes/commercial fees include any applicable taxes, fees or other charges as may become due in the applicable currency of any relevant jurisdiction.

Please be reminded of the handluggage-rules concerning the carriage of liquids. Info on www.condor.com.

Thank you very much for your reservation!
We wish you a pleasant flight.

*************************************************************
**The General Terms and Conditions apply and can be viewed online at http://www.condor.com/us/help-contact/terms-and-conditions.jsp**
*************************************************************

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# EXHIBIT C

**LUTHERAN CHURCH OF THE FOOTHILLS**

Rev. John Lillie, Pastor

5102 N. Craycroft Road
Tucson, Arizona 85718
520.299.5631

website:
www.Foothillslutheran.org

email:
office@Foothills.lutheran.org



July 7, 2020

Shaun P. Kenney
The Kenney Law Firm, P.L.C.
485 South Main Avenue, Building 3
Tucson, Arizona 85701

Dear Mr. Kenney,

I write to you regarding a family that has been a part of our worshiping community since 2019, Persephone Shon and her boys, O       (T     ) and M       (M:   ) R:   .

Persephone, Ti     and M:     came to this church in the early fall of last year. After worshiping with us, at Persephone's request I met with her at church, offering some advice and pastoral counseling. By this time (September 19, 2019) the boys had become a regular part of our Sunday School program which began in early September.

T       and Mi     were (before our virus shut-down) active and enthusiastic parts of our Sunday School, eager to participate and, for young boys, very happy to sing out with our children's choir when they offered their monthly songs to the entire congregation. M     and T     quickly grew into the hearts of those who got to know them, including each of their monthly Sunday Bible lesson teachers.

Persephone was faithful in her involvements as well, worshiping on a regular basis and helping out at a lunch program for those in our community who are HIV positive, through Tucson Interfaith HIV/AIDS Network. I am also aware that through our Sunday School program she was making positive connections and friendships with some of the other parents. Persephone has a responsible job with Pima County, and is a concerned and devoted Mother to her boys.

I enclose pictures of our Sunday School classroom, including our participant "stars", with T     and M     : Sunday School name tags hanging from their star.

Please don't hesitate to contact me with any questions you might have about this lovely family that we are very pleased to have as part of our church community.

Sincerely,

Rev. John Lillie

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

27

# EXHIBIT D

Emerge!
Center Against
Domestic Abuse

2545 East Adams Street
Tucson, Arizona 85716
**Telephone** 520.795.8001
**Facsimile** 520.795.1559
**Crisis Line** 888.428.0101
www.emergecenter.org
info@emergecenter.org

July 10ᵗʰ, 2020

To whom it may concern,

This letter is in reference to Persephone Shon, who is a current participant in Emerge Center Against Domestic Abuse's community-based services program. Persephone Shon has been a participant in Emerge from September 18ᵗʰ, 2019 through the present time.

Emerge's mission is to *provide the opportunity to create, sustain and celebrate a life free from abuse.* We offer a 24/7 multilingual hotline, emergency shelter, community-based services, and housing stabilization services.

Participants interested in receiving services at one of Emerge's community-based service sites complete an intake process that includes a comprehensive assessment of the participant's current abuse issues, level of trauma, basic needs and individual strengths. This assessment process is also used to determine which of Emerge's services may be most beneficial to the participant, and what other community resources may be appropriate as additional support in meeting their needs and goals. Staff at community-based service sites are specially trained to provide crisis services for people in acute and/or lethal situations, as well as ongoing support and case management to those who are dealing with the long-term consequences of their abuse and trauma.

Persephone Shon is a participant in Emerge's community-based services and, at her request, Emerge provided 6.20 hours of services which may include: case management, case plan/goal plan development, crisis counseling, domestic violence education, family systems education, information and referrals to other community resources, lay legal services, life skills education, parenting skills education, safety planning, support groups and victim's rights information; a breakdown by day and service is on the following page(s).

Due to our limitations regarding the sharing confidential information concerning our participants, we are unable to provide more specific information in this letter. If you need additional confirmation of services provided to Persephone Shon please contact me directly at (520) 795-8001 x7403.

Sincerely,

Ed Mercurio-Sakwa
*CEO*

Emerge!
Center Against
Domestic Abuse

2545 East Adams Street
Tucson, Arizona 85716
Telephone 520.795.8001
Facsimile 520.795.1559
Crisis Line 888.428.0101
www.emergecenter.org
info@emergecenter.org

| Date | Service | Hours |
|------|---------|-------|
| 9/18/2019 | Crisis Counseling (Via Phone) | 0.15 |
| 9/18/2019 | DV Ed - Individual | 0.18 |
| 9/18/2019 | Info and Ref (Via Phone) | 0.07 |
| 9/18/2019 | Safety Planning | 0.13 |
| 10/4/2019 | Case Mgmt.-Other | 0.25 |
| 10/4/2019 | Case Plan/Goal Plan Dev. | 0.25 |
| 10/4/2019 | Crisis Counseling (In Person) | 0.25 |
| 10/4/2019 | DV Ed - Individual | 0.25 |
| 10/4/2019 | Info and Ref (In Person) | 0.25 |
| 10/4/2019 | Safety Planning | 0.25 |
| 10/4/2019 | Victim's Comp - Information Provided | 0.08 |
| 10/4/2019 | Victim's Rights Information | 0.08 |
| 10/16/2019 | Case Mgmt.-Other | 0.25 |
| 10/16/2019 | Case Plan/Goal Plan Dev. | 0.25 |
| 10/16/2019 | DV Ed - Individual | 0.25 |
| 10/16/2019 | Safety Planning | 0.25 |
| 10/16/2019 | Sup Group-Life Skills | 0.50 |
| 10/16/2019 | Sup Group-Outside Facilitator | 1.00 |
| 10/23/2019 | Sup Group-Life Skills | 0.50 |
| 10/23/2019 | Sup Group-Outside Facilitator | 1.00 |
| | **Total Service Hours Provided** | **6.20** |

1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26

28

# EXHIBIT E

**SHERRI MIKELS-ROMERO, LCSW, PLLC**
1647 North Alvernon Way, Suite 4
Tucson, Arizona 85712
(520) 307-7337 fax (520) 325-6133

July 6, 2020

Shaun Kenney, Attorney at Law
The Kenney Law Firm
485 South Main Avenue
Building 3
Tucson, Arizona 85701

Re: Persephone Shon, Summary of Psychotherapy Treatment

Dear Mr. Kenney:

I am the psychotherapist who has been treating your client, Persephone Shon, almost weekly since September 2019. I am providing this documentation and summary of treatment per your request, per Persephone.

Persephone presented for her initial intake with a subdued demeanor and mild anxiety. She stated that she was seeking treatment to "get stronger," and learn to cope with stress and anxiety from impact from trauma, related to an abusive relationship with her husband, from whom she had separated. She dissociated and had blocked speech when talking about the domestic violence with her husband. She had several examples of different types of abuse, occurring often, over a long period of time. She described some of his behaviors, such as verbally cruel and demeaning, controling, coercive, veiled threats, intimidating, property damage in the home (many occurrences), and financial and food deprivation, on many occasions. Approximately 18 months earlier, her husband had struck her oldest son in the face, leaving a mark, was cruel to the family pet, and acted angrily, aggressively, and violently in the presence of the children at times. Persephone has consistently presented with symptoms of Post Traumatic Stress Disorder, which is the primary working diagnosis which I have assigned to her. Her anxiety and depressive symptoms are explained by that diagnosis as well. She is fairly often stressed by triggers of her trauma by simple daily occurrences, such as a co-worker's expression or tone, certain issues with purchasing foods, flashbacks of the trauma from her husband's abusive and violent behaviors, etc. Her treatment goals have been to address, desensitize to and reprocess the trauma, and to increase assertiveness and self-confidence. During the course of Persephone's treatment, she has experienced many stressors, most of which are related to her trauma and anxiety regarding her husband's recent behaviors. EMDR therapy has begun and will continue as the trauma is being processed. Recent

**SHERRI MIKELS-ROMERO, LCSW, PLLC**
1647 North Alvernon Way, Suite 4
Tucson, Arizona 85712
(520) 307-7337 fax (520) 325-6133

administration of the PTSD Checklist- Civilian Version- indicated that she continues to experience symptoms of trauma which affect her level of functioning for brief periods of time. The SCL-45 Symptom checklist indicated the same. Persephone has also had questions about domestic violence offenders and offending behaviors, and I have provided some education around those issues. She has also attended a support group and met with staff at a local domestic violence program. While her level of functioning has, overall improved, she continues to experience episodes of the effects of trauma. She also frequently expresses concerns for her children's physical and emotional safety and well-being, if their lives were to change with placement or unsupervised periods of time with their father. She has also acknowledged that she believes that some type of relationship with their father might be something positive for them, were the circumstances to be safely monitored. Healthy parenting has been a daily focus in her own life with her children. Based on Persephone's reports of her husband's behaviors with her and the children, perhaps her husband might benefit from participating in and completing some parenting education and domestic violence treatment, should there be any type of contact with the children in person. The benefits are greater when the treatment and classes are in person, for several reasons.

Please contact me with any questions, clarifications, or need for further information as it pertains to Persephone's treatment.

Sincerely,

Sherri Mikels-Romero, LCSW

Welcome, snomero. You are logged in.

Initals/Agreement Forms   Accounting   Repairable Claims   Patient Portal

| Home | Service Menu | <<LOGOUT | HIPAA | About Us / Privacy | Professional & Institutional Payer list | Forms | Tech Training | Remote Support |

| Desktop | Appointments | Patient Visits | Claims/Billing | Accounting | Manage Office |

Payments/Deposits

| Auto-Post ERA | Add New Payment/Deposit | Payments/Deposits | Apply Payments | Applied Payme

**Payments/Deposits**

Date Created:  By Date
Search For:  Patient Last Name

Display Filter: Office: -- All --

Payment: -- All --

Payer Type: -- All --

Show All
Shon
Search

**Online Patient Payments now Available!**
+ Get paid faster than ever.
+ Easier and more convenient for your patient
+ Save valuable clinic time and focus more on your clients!

Click here to

| Payment Date | Payer Type | Payer | Payment Description | Payment Method / Check Number | Payment Amount | Applied Amount | Where Applied |
|---|---|---|---|---|---|---|---|
| 06/16/2020 | Patient | Shon, Persephone | Check | 109 | $101.68 | $0.00 | View |
| 06/09/2020 | Patient | Shon, Persephone | Check | 108 | $101.68 | $0.00 | View |
| 06/02/2020 | Patient | Shon, Persephone | Check | 107 | $101.68 | $0.00 | View |
| 05/19/2020 | Patient | Shon, Persephone | Check | 106 | $101.68 | $0.00 | View |
| 05/12/2020 | Patient | Shon, Persephone | Check | 105 | $101.68 | $101.68 | View |
| 05/05/2020 | Patient | Shon, Persephone | Check | 103 | $101.68 | $101.68 | View |
| 04/28/2020 | Patient | Shon, Persephone | Check | 101 | $73.68 | $0.00 | View |
| 04/21/2020 | Patient | Shon, Persephone | Check | 6926 | $130.00 | $0.00 | View |
| 04/14/2020 | Patient | Shon, Persephone | Check | 6927 | $130.00 | $101.68 | View |
| 04/07/2020 | Patient | Shon, Persephone | Check | 6925 | $130.00 | $130.00 | View |
| 03/31/2020 | Patient | Shon, Persephone | Check | 6922 | $130.00 | $130.00 | View |
| 03/24/2020 | Patient | Shon, Persephone | Cash |  | $30.00 | $30.00 | View |
| 03/24/2020 | Patient | Shon, Persephone | Check | 5621 | $130.00 | $0.00 | View |
| 03/17/2020 | Patient | Shon, Persephone | Check | 5619 | $130.00 | $130.00 | View |
| 03/10/2020 | Patient | Shon, Persephone | Check | 5677 | $130.00 | $130.00 | View |
| 02/18/2020 | Patient | Shon, Persephone | Check | 5514 | $130.00 | $130.00 | View |
| 02/11/2020 | Patient | Shon, Persephone | Check | 5613 | $130.00 | $130.00 | View |
| 02/03/2020 | Patient | Shon, Persephone | Check | 5609 | $130.00 | $130.00 | View |
| 01/29/2020 | Patient | Shon, Persephone | Check | 6906 | $130.00 | $130.00 | View |
| 01/15/2020 | Patient | Shon, Persephone | Check | 6905 | $130.00 | $130.00 | View |
| 01/09/2020 | Patient | Shon, Persephone | Check | 6905 | $130.00 | $130.00 | View |
| 01/03/2020 | Patient | Shon, Persephone | Check | 6602 | $130.00 | $130.00 | View |
| 12/19/2019 | Patient | Shon, Persephone | Check | 6699 | $130.00 | $130.00 | View |
| 12/10/2019 | Patient | Shon, Persephone | Check | 6697 | $130.00 | $130.00 | View |
| 12/04/2019 | Patient | Shon, Persephone | Check | 6695 | $130.00 | $130.00 | View |
| 11/26/2019 | Patient | Shon, Persephone | Check | 5594 | $130.00 | $130.00 | View |
| 11/19/2019 | Patient | Shon, Persephone | Check | 5593 | $130.00 | $130.00 | View |
| 11/12/2019 | Patient | Shon, Persephone | Check | 5589 | $130.00 | $130.00 | View |
| 11/05/2019 | Patient | Shon, Persephone | Check | 5588 | $130.00 | $130.00 | View |
| 10/24/2019 | Patient | Shon, Persephone | Check | 5584 | $130.00 | $130.00 | View |
| 10/18/2019 | Patient | Shon, Persephone | Check | 5580 | $90.00 | $-90.00 | View |
| 09/30/2019 | Patient | Shon, Persephone | Check | 5577 | $160.00 | $-160.00 | View |

Page 1  of 1  GO

Shortcut Keys: Alt F1-Help | F2-Add New Appointment | F7-Add New Visit | F8-Add New Payment | F9-Add New Patient | F10-Patient List

WaitingPlease, select row

**SHERRI MIKELS-ROMERO, L.C.S.W.**
1647 North Alvernon Way, Suite 4
Tucson, Arizona 85712
(520) 307-7337

**CURRICULUM VITAE**

## EDUCATION

Arizona State University, Tucson, AZ
Master of Social Work

Prescott College, Tucson, AZ
Bachelor of Arts, Psychology

## LICENSURE and CERTIFICATIONS

Licensed Clinical Social Worker
Arizona State Board of Behavioral Health Examiners

Certified Advanced Children, Youth & Family Social Worker
National Association of Social Workers

Certified EMDR Therapist
EMDR International Association

Certified Field Instructor for graduate students
Arizona State University School of Social Work

## RELEVANT PROFESSIONAL EXPERIENCE

**Private Practice**, Tucson, AZ                                          02/07-present
**Adult, Child, and Family Therapist**
Provide individual, family, and group therapy to adults, children, and adolescents. Much
experience working with clients involved with Child Protective Services. Provide Critical
Incident Debriefing services. Provide trauma treatment to first responders, military veterans,
and active duty personnel, and others. Provide testimony in dependency and family court cases,
often as an expert witness. Provide reunification therapy when clinically recommended.

**Easter Seals Blake Foundation**, Tucson, AZ                          09/10-09/15
**Child and Family Therapist**
Provided therapy to individuals and families involved with Child Protective Services.

**Crisis Care Network/R3 Continuum**, Wyoming, MI
03/07-present
Provide on and off-site critical incident response and crisis intervention services, alone and with
other therapists, to individuals and groups.

Case 4:20-cv-00246-RM   Document 12   Filed 07/23/20   Page 49 of 54

**Arizona Trauma Recovery Network, Arizona**                                   05/15-present

Provide 6-12 hours of pro bono EMDR treatment after a community disaster or emergency

**The Center for Life Skills Development, LLC.,** Tucson, AZ                    02/08-11/10
**Adult, Child, and Family Therapist**

Provided therapy to individuals, couples, and families, with focus on working with Native American clients. Used drumming in therapeutic approach.

**Carondelet Health Network,** Tucson, AZ                                       11/07-07/10
**Behavioral Health Therapist**

Completed Behavioral Health assessments/consults on patients in hospital emergency departments and medical floors to determine needed interventions, initiated emergency petition process for civil commitment of patients, collaborated with community providers and resources, provided crisis debriefing.

**Counseling & Consulting Services, Inc.,** Tucson, AZ                          01/02-02/07
**Clinical Supervisor**

Provided clinical supervision to graduate student interns and to therapists working towards licensure.

**Therapist**

Provided therapy to individual adults, adolescents, children, and to couples and families. Facilitated group therapies on parenting, domestic violence, anger management, and non-offending parents. Developed and implemented a 16 week non-offending parent program for mothers of sexually abused children. Provided consultation and training to the sex abuse unit at Child Protective Services on issues of sexual abuse and incest. Participated in development of the parenting group curriculum. Approximately 2/3 of ongoing caseload were mandated clients referred by Child Protective Services or Pima County Adult and Juvenile Probation Departments. Areas of specialization were: children with difficult behaviors, personality disorders; children and adults with history of trauma; and difficult to engage clients. Facilitated Clarification sessions between children and parents. Provided in-service trainings on issues such as: trauma, incest, and non-offending parents, evaluating children, assessing lethality, treatment approaches with families, crisis intervention, and using the DSM IV. Frequently provided testimony to the court in dependency and probation cases. Often called as an expert witness on issues of sexual abuse, incest, childhood trauma, and personality disorders.

**Southern Arizona Mental Health Center,** Tucson, AZ                           01/01-03/02
**Shift Coordinator-Crisis Center and Mobile Crisis Team**

Provided administrative and clinical supervision for behavioral health professionals and paraprofessionals, ensured staffing needs met for the shift. Triaged clients and delegated triage responsibilities, prioritized delivery of clinical services. Testified in court competency hearings.

**Senior Clinician-Crisis Center/Mobile Crisis Team**

Provided walk-in crisis services, intervention, psychosocial assessments, clinical evaluations for services, and for clients applying for Seriously Mentally Ill status. Petitioned clients for involuntary psychiatric admission when indicated, interfaced with law enforcement about mentally ill persons, responded to mobile acute crisis situations, completed emergency

evaluations in hospitals on suicidal and/or homicidal patients, served on agency committee for changes to the mobile crisis team's clinical and operations policies.

**Clinical Supervisor**
Provided clinical supervision to a graduate student intern.

**Pascua Yaqui Tribal Social Services,** Tucson, AZ                                         10/99-09/00
**Investigator and ongoing Case Manager, Child Protective Services**
Investigated reports of child abuse and neglect within the tribe or tribal jurisdiction. Removed children when indicated. Interviewed prospective placements for children, mediated family disputes related to removal of children, coordinated care. Testified in court hearings, accompanied detectives to forensic interviews of child victims, provided ongoing case management, participated in development of department policies and procedures.

**Las Familias Centers for Child Sexual abuse Treatment,** Tucson, AZ                07/97-06/99
**Child and Family Therapist/Case Manager**
Provided individual and family therapy, facilitated therapeutic groups for child and adolescent victims of sexual abuse, provided parenting education. Participated in team chart audits and development of parent education program. Testified in dependency cases.

**Arizona Children's Home Association,** Tucson, AZ                                            08/96-05/97
**Child and Family Therapist, Field Placement**    (650 hours)
Provided individual and family therapy, in-home and in-office.

**Apollo College,** Tucson, AZ                                                                          09/96-01/97
**Instructor**
Wrote, developed, and taught curriculum for the Psychiatric Technician program for students.

**Palo Verde Hospital,** Tucson, AZ                                                                  04/95-09/96
**Admissions Planner/Crisis Interventionist**
Triaged patients in psychiatric hospital, coordinated admissions with physicians, hospital staff, and insurance providers. Facilitated petition process for involuntary admissions.

**Family Center of the Conciliation Court,** Tucson, AZ                                     08/95-05/96
**Therapist, Mediator, Evaluator- Field Placement**    (576 hours)
Mediated custody disputes, provided therapy to individuals and couples. Assisted in gathering information and interviewing people as part of the evaluation process in making recommendations to the court about custody, parenting schedules, and parent education.

**Charter Behavioral Health Systems,** Tucson, AZ                                          09/86-09/94
(Formerly Tucson Psychiatric Institute)
**Co-Coordinator/Co-Therapist, Youth Partial Hospitalization Programs**    08/91-09/94
Co-facilitated adolescent and multi-family group therapies using experiential, expressive, and process approaches. Co-facilitated family therapy with families of deaf patients (approximately 6 families for weekly/twice-weekly sessions over 1 1/2 year period. Wrote treatment plans and discharge summaries. Trained and evaluated staff and volunteers. Participated in marketing projects.

**Child Program Coordinator, Child Inpatient Program**
09/86-08/91

Created and developed child inpatient program; prior to this, children were admitted to the adolescent unit. Coordinated patient care, directed treatment planning sessions. Trained and evaluated psychiatric technicians. Participated in quality assurance audits, managed budget and completed budget projections.

**Pima County Attorney's Victim Witness Program**, Tucson, AZ
09/89-12/95

**Volunteer Advocate**

Responded to police calls to assist victims of crime (almost always at the scene of the crime). Participated in death notifications to family members, provided crisis counseling to victims, families, co-workers. Participated in Critical Incident Stress Debriefings with employees of businesses in which one or more employees had been the victim(s) of a crime. Trained new volunteers in program policies and procedures. Took weekend on-call shifts after hours. Participated in media coverage for human interest stories and program exposure (3).

**Amity Teaching Communities**, Tucson, AZ
06/94-09/94

**Intern**   (330 hours)

Co-facilitated experiential and expressive therapy groups with women residents. Co-facilitated psychoeducational and process groups with men and women residents. Co-facilitated intensive weekend family workshops. Completed extensive psychosocial histories.

**Pima County Juvenile Court Center**, Tucson, AZ
09/85-12/89

**Court Appointed Special Advocate, Volunteer**

Investigated dependency cases independently from Child Protective Services unit staff. Wrote reports and made recommendations to the court about custody and visitation. Testified in court hearings, in the best interests of the children.

**Project Safe Place**, Tucson, AZ
01/88-12/89

**Volunteer Crisis Counselor/Advocate**

Responded to calls from children and teens (often runaways), provided crisis counseling and mediation (trained in mediation, 32 hours) to the teens and their families, referred to appropriate services in the community.

**Child Protective Services, Volunteer Department**, Tucson, AZ
06/86-09/89

**Compensated Visitation Supervisor**

Provided strict supervision in cases of court ordered visitation. Arranged visits between children and non-custodial parents, wrote reports of visits and interactions with each parent, testified in court hearings, conferred with CPS case managers and therapists for children.

**Arizona Children's Home**, Tucson, AZ
04/85-05/86

**Volunteer, Big Sister and Gymnastics Instructor**

Worked 1:1 and in groups with children in residential treatment. Took individual residents on outings. Taught gymnastics to male and female child residents.

**Common Ground Clinic**, Kokomo, IN
07/79-08/81

**Volunteer Coordinator, Crisis Hotline**

Moved the agency hotline to a private location for crisis calls after agency funding caused

the lay off of all paid staff. Raised money to keep the hotline staffed with volunteers for one year. Scheduled volunteers, ensured that records were current, managed budget, oversaw operations.

**Volunteer**

Answered crisis calls to hotline, provided crisis intervention to walk-in clients, made referrals to other social services agencies, assisted in training of volunteers.

**Bona Vista Rehabilitation Center**, Kokomo, IN                                              06/80-0381

**Volunteer**

Assisted in teaching life skills to developmentally disabled adults.

**YMCA**, Kokomo, IN                                                                                05/79-07/82

**Instructor**

Instructed progressive gymnastics, gym portion of Gym & Swim program facilitating activities that promoted developmental tasks. Taught infant exercise and infant swimming with parents and children (Bonnie Prudence method). Worked as aid in pre-school program.

**Family Intervention Center (domestic violence shelter)**, Kokomo, IN                    06/80-05/82

**Coordinator, Children's Services/Client Advocate**

Planned and facilitated therapeutic and recreational activities for child residents. Advocated for women with social services agencies, schools, and the legal system. Provided crisis intervention with families. Involved in direct rescue of women and children from abusive situations, often during their immediate escape and in the presence of the perpetrator (prior to domestic violence laws or the existence of 911 services).

## OTHER EXPERIENCE

**Provider for The National Center for Missing and Exploited Children**                      Current

**Pima County Attorney's Office Domestic Violence Task Force**                               09/07-05/08

Ongoing Services Committee

**Child and Family Resources**, Tucson, AZ                                                    08/07-09/08

**Volunteer**

Facilitated psychoeducational/process groups with teen mothers.

**Up With People International Alumni Association**, Tucson, AZ                              1982-Present

Following one year of international travel with a cast (living with host families, providing community service, performing in a high-tech public show- promoting peace and understanding), became active in the alumni association; fundraising efforts, interviewing prospective students to travel with the program, serving on planning committees for organizing local cast visits, and alumni reunions for more than 1000 attendees per reunion.

**Project H.O.M.E. Board of Directors**, Tucson, AZ                                          1991-2006

**Chairman**

## ASSE International Student Exchange Programs, Tucson, AZ

01/86-12/95

**Area Representative**

Recruited local host families for exchange students, facilitated placement, providing ongoing counseling and support to students and families. Recruited and prepared local students to travel as exchange students abroad.

## United States Defense Attaché to Sweden, Stockholm, Sweden

06/82-01/85

**Coordinator of Special & Social Events**

Coordinated and supervised social functions for high-level dignitaries in the diplomatic community for the U. S. defense attaché; and for dignitaries from other embassies. Hired and supervised catering staff and musicians, arranged private activities for visiting diplomats and their families.

**Governess**

Tutored child, taught social skills, arranged for sports lessons in several areas, coordinated special transportation services (high security), provided child care.

## Indiana Crisis Resource Federation Board of Directors, Indianapolis, IN

1979-1981

## TRAINING

**Areas of focus post-graduate through June 2016:**

Trauma- more than 310 hours

Sexual Abuse & Incest- more than 65 hours

Children, Youth, & Families- more than 230 hours

Families, specifically- more than 90 hours

Critical Incident Response and Crisis Intervention- more than 150 hours

Evaluation & Assessment- more than 40 hours

EMDR related trainings for special populations, and individuals with specific diagnoses and Symptoms- more than 90 hours

## SPECIFIC SPECIALIZED TRAININGS:

### EMDR (Eye Movement Desensitization and Reprocessing)- 40 hours

01/13, 06/13

EMDR Institute Inc.

### EMDR and The Art of Psychotherapy With Children and Preteens- 28 hours

11/14, 05/17

Tetrault Advanced Seminars

### Clinical Supervision: Processes & Interventions- 12 hours

08/05

Southwestern School for Behavioral Health Studies, Tucson, AZ

### Child Welfare Training- 36 hours

12/99

Pascua Yaqui Tribal Social Services, Tucson, AZ

### Child Abuse Investigations Course- 16 hours

11/99

Federal Bureau of Investigation Training School, Phoenix, AZ

**15th Annual Association for Play Therapy International Conference- 14 hours**          10/98
Association for Play Therapy, Phoenix, AZ

**Pima County Attorney's Victim Witness Program Volunteer Training- 40 hours**          09/89
Pima County Attorney's Victim Witness Program, Tucson, AZ
Training on Crisis Intervention and Victimology.

**Project Safe Place Volunteer Training- 12 hours**          02/88
Project Safe Place, a program sponsored by Our Town Family Center and La Hacienda
programs, Tucson, AZ
Training on Crisis Intervention, incorporation of Mediation (required to have previously
completed a 40 hour mediation training), lethality assessment, community resources, advocating
for children by facilitating arrangements with shelters, family counseling, etc.

**Our Town Family Center Mediation program- 40 hours**          02/88
Our Town Family Center, Tucson, AZ

**Court Appointed Special Advocate Volunteer Training- 30 hours**          10/85
Pima County Juvenile Court Center, Tucson, AZ
Training on the juvenile court system, case investigation, intervention and assessment, case
management, permanency planning, legal aspects of child abuse/neglect, testifying in court,
writing court reports, etc.

**Crisis Intervention Volunteer Training- 40 hours**          07/79
Common Ground Clinic, Kokomo, IN
Training on Crisis Intervention for walk-in and hotline clients, education about street drugs and
drug abuse, lethality assessment, domestic violence, etc.

**Critical Incident Stress Debriefing- 3 hours**          06/08
Crisis Care Network, Grand Rapids, MI

**Group and Individual Crisis Intervention – 27 hours**          09/15
UMBC Training Centers, Baltimore, MD
ISISF model

**TRAININGS PRESENTED FOR PROFESSSIONAL DEVELOPMENT AND
CONTINUING EDUCATION**
(about or related to):

Trauma, Incest, Non-Offending Parents, Evaluating Children, Assessing Lethality, Treatment
Approaches with Families, Crisis Intervention, Using the DSM IV When Evaluating Children and
Adults, Engaging the Difficult to Engage Client.

**MEMBERSHIPS**
National Association of Social Workers                                    Current from 1997
Association for the Treatment of Sexual Abusers                          2007-2018
EMDR International Association                                            Current from 2013
Up With People International Alumni Association                          Current from 1983