**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bogdan Radu,<br><br>           Petitioner,<br><br>v.<br><br>Persephone Johnson Shon,<br><br>           Respondent. | No. CV-20-00246-TUC-RM<br><br>**ORDER** |

Pending before the Court is Petitioner Bogdan Radu's ("Radu") Verified Petition for Return of Children to Germany ("Petition") (Doc. 1), brought pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("the Convention") and its implementing legislation, the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 9001, *et seq.* (formerly 42 U.S.C. § 11601, *et seq.*). Respondent Persephone Johnson Shon ("Shon") filed an Answer to the Petition (Doc. 12) on July 23, 2020. The Court took the matter under advisement following an evidentiary hearing held on July 29, 2020 and August 26-27, 2020, during which the Court received exhibits into evidence and heard the testimony of Radu, Shon, Inge Frick-Wilden ("Frick"), Janet Johnson ("Johnson"), and Sherri Mikels-Romero. (Docs. 15, 22-25.) For the following reasons, the Petition will be granted.

. . . .

. . . .

## I.  Background[1]

Radu and Shon were married in 2011 in the United States and are the parents of two minor children, O.S.R., who was born in 2013 in the United States, and M.S.R., who was born in 2016 in Germany.  In December 2015, Radu moved from the United States to Germany; Shon followed him to Germany in March 2016.  From 2016 to 2019, Radu, Shon, and their two minor children lived in an apartment in Germany that they leased from landlords Inge and Hans Frick.  The children were enrolled in school in Germany.

On June 10, 2019, Shon took O.S.R. and M.S.R. from Germany to the United States.  Since that date, Shon and the children have resided at Shon's parents' house in Tucson, Arizona.  On August 10, 2019, Shon sent Radu a message stating that the children were enrolled in school in Arizona.  On September 9, 2019, she filed a petition for dissolution of marriage and a motion for temporary custody of O.S.R. and M.S.R. in Pima County Superior Court case number D20192814; service has not been accomplished in that case.  On June 8, 2020, Radu filed the Petition in the above-captioned action.

## II.  Discussion

In an action under the Convention for the return of a child, the petitioner has the burden of establishing by a preponderance of the evidence "that the child has been wrongfully removed or retained within the meaning of the Convention."  22 U.S.C. § 9003(e)(1)(A).[2]  Under Article 3 of the Convention, the removal or retention of a child is

---

[1]  The facts discussed in this Order are drawn from unopposed portions of the parties' pleadings as well as the evidence and testimony presented at the evidentiary hearing.

[2]  Shon argues, as an initial matter, that the Convention does not apply because Radu left Germany for Romania on or about November 19, 2019. (Doc. 12 ¶ 12.) The Court finds that the evidence sufficiently shows that Radu's visit to Romania was temporary and that travel restrictions caused by the COVID-19 pandemic contributed to the delay in his return to Germany. *See Gaudin v. Remis*, 379 F.3d 631, 636-37 (9th Cir. 2004) ("*Gaudin II*") (holding that domicile—which requires the intent to remain in a jurisdiction—is the appropriate measure of whether a petitioner has moved permanently to a new jurisdiction for purposes of the Convention). The Court also notes that Shon's position on this issue is not supported by the statute she cites (*see* Doc. 12 ¶ 12 (citing 22 U.S.C. § 9003(f)), and it is not clear to the Court whether the Convention continues to apply when a petitioner moves to a different country. *See Gaudin v. Remis*, 282 F.3d 1178, 1183 (9th Cir. 2002) ("*Gaudin I*") ("We need not resolve the broad question of whether, or under what circumstances, a child should be returned to a petitioner's new,

wrongful if "it is in breach of rights of custody attributed to a person . . . under the law of the State in which the child was habitually resident immediately before the removal or retention."  Shon concedes that, when she removed the children from Germany and brought them to the United States, Germany was the children's "state of habitual residence" within the meaning of the Convention; she further concedes that, under German law, she and Radu had joint rights to custody and control of the children.  (Doc. 1 ¶¶ 2, 7; Doc. 12 ¶¶ 2, 7.)  The Court finds that Shon's removal of the children to the United States, and retention of them therein, was wrongful within the meaning of Article 3 of the Convention.

Article 12 of the Convention provides that, if less than one year has elapsed from the date of the wrongful removal or retention and the commencement of the proceedings, the Court "shall order the return of the child forthwith," unless an exception applies. ICARA similarly provides that "[c]hildren who are wrongfully removed or retained within the meaning of the Convention are to be promptly returned unless one of the narrow exceptions set forth in the Convention applies." 22 U.S.C. § 9001(a)(4).  At the evidentiary hearing, the Court found that the one-year period began to run on June 10, 2019, when Shon took the children from Germany to the United States, and that Radu filed the pending Petition within one year of that date.[3]  Accordingly, the Court must order the return of the children unless an exception applies.

Shon raises two affirmative defenses under Article 13 of the Convention.  First, she argues that Radu consented to or acquiesced in the removal of O.S.R. and M.S.R. from Germany.  (Doc. 12 ¶ 14.)  Pursuant to Article 13(a) of the Convention, the Court is not required to order the return of a child if the respondent establishes that the petitioner "consented to or subsequently acquiesced in the removal or retention" of the child.  The

---

post-abduction residence.").
[3]  Article 12 of the Convention further provides that, even if the proceedings have been commenced more than one year after the wrongful removal or retention, the Court must order the return of a child "unless it is demonstrated that the child is now settled in its new environment."  The well-settled defense under Article 12 is not available to Shon because Radu filed the Petition within one year of the wrongful removal.

respondent bears the burden of establishing this defense by a preponderance of the evidence. *See* 22 U.S.C. § 9003(e)(2)(B). The evidence and testimony presented at the evidentiary hearing shows that, although Radu negotiated with Shon regarding custody of the children and may have consented to Shon taking the children on a temporary visit to the United States, Radu did not consent to Shon permanently moving the children to the United States. Shon has not established a defense under Article 13(a) of the Convention.

Second, Shon argues that returning O.S.R. and M.S.R. to Germany would place the children at grave risk of physical or psychological harm. (Doc. 12 ¶ 14.) Under Article 13(b) of the Convention, the Court is not required to order the return of a child if the respondent establishes that there is a "grave risk" that the child's "return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." The respondent bears the burden of establishing the grave-risk defense by clear and convincing evidence. *See* 22 U.S.C. § 9003(e)(2)(A).

The Convention does not extend to custody determinations; it is designed only "to decide *which country* should make the custody determination." *Gaudin I*, 282 F.3d at 1183 (emphasis in original). Accordingly, in evaluating the grave-harm exception, the Court may not speculate on where the child would be happiest, *Gaudin v. Remis*, 415 F.3d 1028, 1035 (9th Cir. 2005) ("*Gaudin III*"), or who is a better parent, *Blondin v. Dubois*, 189 F.3d 240, 246 (2d Cir. 1999) ("*Blondin I*"). The Court may decline to return a child under the grave-risk exception only if the respondent establishes that "the child would suffer serious abuse that is a great deal more than minimal" if returned. *Gaudin III*, 415 F.3d at 1035 (internal quotation marks and citation omitted). The focus is not on whether a living situation would be "capable of causing grave psychological harm over the full course of a child's development" but rather whether it is "likely to do so during the period necessary to obtain a custody determination." *Id.* at 1037. In addition, the Court must consider "whether any reasonable remedy can be forged that will permit the children to be returned to their home jurisdiction for a custody determination" while avoiding grave risk of harm. *Id.* at 1036.

The evidence presented at the evidentiary hearing—including the testimony from Shon, Frick, and Johnson, as well as from Radu himself—supports a finding that Radu behaved in ways that could be characterized as psychologically or emotionally abusive.[4] The record indicates that he had an explosive temper and that, when angry, he yelled at Shon and the children and also used inappropriate, degrading, and/or derogatory language. Shon, Frick, and Johnson each testified to being scared of Radu.

The evidence of physical abuse of the children is less significant than the evidence of emotional or psychological abuse. Shon testified that Radu banged his fists on tables and/or doors when angry, and that he threw objects, including a chair. She also testified that he once slapped O.S.R. There is no evidence that Radu hit either of the minor children in a manner that required medical attention, nor is there any evidence that Shon or anyone else sought a protective order or filed any police reports concerning Radu's behavior toward the children. There is no evidence of any sexual abuse of the children.

The evidence is insufficient to show that O.S.R. and M.S.R. would be at grave risk of physical harm if returned to Germany. However, the Court finds that the children would be at grave risk of psychological harm if returned to Germany in the custody of Radu. To mitigate this risk of psychological harm, the Court will order that O.S.R. and M.S.R. be returned to Germany in the custody of Shon until a custody determination can be made by a German court of competent jurisdiction. *See Gaudin III*, 415 F.3d at 1037 (suggesting that district court could require children to be returned in the care of the abducting parent); *cf. Blondin I*, 189 F.3d at 249 (2d Cir. 1999) (suggesting return of

---

[4] At the evidentiary hearing, the Court allowed Shon to present evidence that O.S.R. and M.S.R. are well settled in Tucson, relying upon *Blondin v. Dubois*, 238 F.3d 153, 164 (2d Cir. 2001) ("*Blondin II*"), which held that "the fact that a child is settled may form part of a broader analysis [under Article 13(b)] of whether repatriation will create a grave risk of harm." The record contains evidence that O.S.R. and M.S.R. have been attending the International School in Tucson and going to services at a Lutheran church, and that O.S.R. has had four counseling sessions with a Tucson therapist since July 2020. Although the children's lives will, unfortunately, be disrupted by their return to Germany, it was Shon's wrongful removal of them from Germany that is ultimately responsible for any disruption that occurs as a result of their return. *See Cuellar v. Joyce*, 596 F.3d 505, 511 (9th Cir. 2010). Because "it is the *abduction* that causes the pangs of subsequent return," the Ninth Circuit has held that "[t]he fact that a child has grown accustomed to her new home is never a valid concern under the grave risk exception." *Id.* (internal quotation marks omitted; emphasis in original).

children in third party's care). The Court will hold a further hearing upon request concerning the logistics of the children's return.

### III. Expenses

Radu argues that he is entitled to reimbursement of his reasonable costs and fees related to this matter. (Doc. 1 ¶ 11.) Article 26 of the Convention provides that, upon ordering the return of a child, the Court "may, where appropriate, direct the person who removed or retained the child . . . to pay necessary expenses incurred by or on behalf of the applicant . . . ." Similarly, ICARA provides that a court ordering the return of a child under the Convention "shall order the respondent to pay necessary expenses incurred by the petitioner . . . unless the respondent establishes that such order would be clearly inappropriate." 22 U.S.C. § 9007(b)(3). The Court will take Radu's request for reimbursement of expenses under advisement pending additional briefing.

**IT IS ORDERED** that the Petition (Doc. 1) is **granted**. Respondent Persephone Johnson Shon shall return the minor children O.S.R. and M.S.R. to Germany. To prevent a grave risk of psychological harm, Shon shall retain temporary custody and care of the children until a custody determination can be made by a German court of competent jurisdiction.

**IT IS FURTHER ORDERED** that travel arrangements for returning the children to Germany shall be made within **thirty (30) days** of the date this Order is filed.

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

**IT IS FURTHER ORDERED** that, within **twenty-one (21) days** of the date this Order is filed, Petitioner Bogdan Radu may file a motion for an award of expenses which addresses the propriety of such an award and lists the specific expenses for which Radu is seeking reimbursement. If a motion is filed, Respondent may file a response within **fourteen (14) days** of the filing of the motion. No reply will be permitted absent further Order.

Dated this 16th day of September, 2020.

_____
Honorable Rosemary Márquez
United States District Judge