WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bogdan Radu, | No. CV-20-00246-TUC-RM |
| Petitioner, | **ORDER** |
| v. | |
| Persephone Johnson Shon, | |
| Respondent. | |

On August 22, 2022, the Court granted Petitioner Bogdan Radu's Petition for Return of Children to Germany and ordered Respondent Persephone Johnson Shon to return with minors O.S.R. and M.S.R. to Germany within thirty days (hereinafter, "Third Return Order"). (Doc. 112.)[1] Respondent filed a Notice of Appeal (Doc. 114) and a Motion to Stay the Court's Third Return Order pending the appeal (Doc. 115). The Court temporarily stayed the Third Return Order pending resolution of Respondent's Motion to Stay. (Doc. 117.) Petitioner filed a Response in opposition to the Motion to Stay (Doc. 118), and Respondent filed a Reply (Doc. 119).

**I.      Legal Standard**

In considering whether to stay a return order in a Hague Convention case, courts consider the traditional stay factors: "(1) whether the stay applicant has made a strong showing that [s]he is likely to succeed on the merits; (2) whether the applicant will be

---

[1] The Court previously ordered the return of O.S.R. and M.S.R. to Germany on September 17, 2020 ("First Return Order") (Doc. 26) and on December 30, 2021 ("Second Return Order") (Doc. 77). As the parties are familiar with the procedural history of this case, the Court does not recount it here.

irreparably inured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Chafin v. Chafin*, 568 U.S. 165, 179 (2013).

## II. Motion to Stay

Respondent argues that she is likely to prevail on appeal because (1) this Court failed to hold an additional evidentiary hearing after the Ninth Circuit's second remand of this case; (2) this Court did not allow Respondent's child psychology expert to testify again following her August 26, 2020 testimony; (3) this Court engaged in speculation in its Second and Third Return Orders that an "order for the children to return to Germany" in Respondent's "temporary custody . . . is enforceable in Germany"; (4) this Court did not reasonably ensure compliance with its alternative remedy in Germany; (5) this Court improperly assessed the likelihood of Petitioner's compliance with voluntary commitments; (6) this Court engaged in *ex parte* inquisitorial evidence gathering with the executive branch; (7) this Court erred in characterizing the grave risk to O.S.R. and M.S.R. as "borderline," because the Hague Convention does not create a spectrum of grave risk; (8) this Court should have ordered Petitioner to confirm there are no criminal proceedings pending against Respondent in Germany; (9) this Court erred in finding Petitioner's testimony more credible than Respondent's; and (10) this Court placed speed and return above the required prioritization of the children's physical and psychological safety. (Doc. 115 at 7-14, 18-19.) Respondent further argues that she and the children will suffer irreparable harm absent a stay; that Petitioner will not be substantially injured in the event of a stay because Respondent's appeal is being expedited by the Ninth Circuit Court of Appeals; and that the public interest in avoiding the shuttling of children back and forth between parents and across international borders favors granting a stay. (*Id.* at 19-20 (internal quotation marks omitted).)

In his pro se Response, Petitioner argues that a further evidentiary hearing is unnecessary. (Doc. 118 at 1-2.) He urges the Court to deny Respondent's Motion to Stay, to consider limiting Respondent's freedom of movement, and to explore the option

of returning the children to Germany without Respondent. (*Id.* at 2-3.) He states that "the legal situation of the Respondent may become legally insurmountable in the near future if a trip overseas will be considered an aggravating factor, not only for the children to be safely returned to Germany as they may be re-abducted in transit, but also seriously detrimental to the national security interests of the United States Govt, the United States Army, the United States Air Force and the public interest at large." (*Id.* at 3 (emphasis omitted).)

In reply, Respondent argues that Petitioner's Response demonstrates the need for a stay because Petitioner threatens in the Response "to 're-abduct' the children to a third country when they are in transit to Germany"; he "renews his threats of criminal proceedings against" Respondent; he falsely accuses Respondent of not complying with Court Orders; and he threatens Respondent "by claiming that she is a threat to the national security interests of the United States and its military agencies." (Doc. 119 at 2, 4.)[2]  Respondent argues that there are no orders or protective measures in place in Germany, as the German courts are unable to take any such steps prior to the children's arrival in Germany. (*Id.* at 4-7.) She states that returning the children to Germany means, as a practical matter, returning them to Petitioner, which would expose them to physical or psychological harm. (*Id.* at 7.) Respondent also reiterates her arguments that this Court was required to hold an evidentiary hearing after the Ninth Circuit's second remand; that this Court was required to allow Respondent's psychological expert to testify at the hearing; and that a stay would not cause substantial injury to Petitioner given the expedited basis of Respondent's appeal. (*Id.* at 2-9.) Respondent attaches to her Reply an affidavit and updated report by her psychological expert Sherri Mikels-Romero, LCSW (Doc. 119-1), which Respondent offers as a summary of "the testimony

---

[2] The Court disagrees with Respondent's characterization of portions of the Response. Nowhere does the Response mention abduction to a third country, and nowhere does Petitioner threaten to abduct the children himself. Petitioner expresses concern in the Response that the children could be re-abducted in transit instead of safely returned to Germany, and it is not clear who Petitioner fears would re-abduct the children, but from the context of the surrounding paragraph, it appears Petitioner fears Respondent would re-abduct the children. Furthermore, nowhere in the Response does Petitioner threaten to file criminal proceedings against Respondent.

1   Ms. Mikels-Romero would have provided had she not been excluded" (Doc. 119 at 3).

2   **III.    Discussion**

3   The Court does not find that Respondent has made a strong showing that she is likely to succeed on the merits of her appeal. Respondent mischaracterizes this Court's Third Return Order in arguing that this Court "engaged in speculation . . . that its order for the children to return to Germany in the temporary custody of the Mother is enforceable in Germany." (Doc. 115 at 9 (internal quotation and alteration marks omitted).) Contrary to Respondent's characterization, this Court's Second and Third Return Orders did not order the return of O.S.R. and M.S.R. in the temporary sole custody of Respondent. Instead, this Court ordered Respondent to return with O.S.R. and M.S.R. to Germany, where Respondent and Petitioner have joint custody rights under German law. (Doc. 77 at 8; Doc. 112 at 5.) The Court found in its Second Return Order that an ameliorative measure requiring the children to be returned in the temporary sole custody of Respondent was unnecessary to mitigate a grave risk of psychological harm to O.S.R. and M.S.R. (Doc. 77 at 6.) The joint custody rights that Petitioner and Respondent have under German law are enforceable by German courts, and the Ninth Circuit has already held that a district court has discretion to order the relocation of an abducting parent if doing so "can help alleviate any grave risk of harm from repatriation of the kids." *Radu v. Shon*, 11 F.4th 1080, 1090 (9th Cir. 2021), *judgment vacated on other grounds by Shon v. Radu*, 142 S. Ct. 2861 (2022). Accordingly, Respondent has failed to make a strong showing that this Court engaged in speculation or failed to ensure compliance with its ameliorative measure.

Respondent also criticizes this Court for doubting her credibility, arguing that a domestic violence survivor's trauma must be taken into account when assessing the credibility of her testimony concerning her abuse. (Doc. 115 at 12-14.) However, this Court credited Respondent's testimony concerning Petitioner's treatment of her and the children. (*See* Doc. 26 at 5.) The testimony that the Court found to be less than credible—as explained in its Second Return Order—concerned Respondent's ability to

afford plane tickets to Germany or rent in Germany.  (*See* Doc. 77 at 3, 7-8.)  Because the Court did not find Respondent's testimony concerning her inability to pay for plane tickets or rent to be entirely credible, it was not convinced that ordering Petitioner to pay for those costs was necessary or appropriate.  However, it did find credible Petitioner's testimony that he would be willing to pay for such costs if necessary.  Petitioner has failed to show why this Court erred in its evaluation of the credibility of Respondent's testimony concerning her finances or Petitioner's testimony concerning his willingness to pay for airfare and rent until a custody determination can be made in Germany.  (*See* Doc. 115 at 10-11.)

Petitioner likewise has failed to show why this Court erred in refusing to require Petitioner to confirm that there are no criminal proceedings pending against Respondent in Germany.  (*See* Doc. 115 at 12.)  Respondent abducted O.S.R. and M.S.R. from Germany in June 2019.  (Doc. 26 at 2.)  Petitioner initiated this action in June 2020.  (Doc. 1.)  This Court first ordered the return of O.S.R. and M.S.R. to Germany in September 2020.  (Doc. 26.)  Respondent has had ample time to ascertain whether there are criminal proceedings pending against her in Germany, and she has not shown why this Court erred in faulting her for failing to do so.

Petitioner has also failed to show that this Court erred in characterizing the grave risk of harm in this case as "borderline."  (*See* Doc. 115 at 12.)  The Ninth Circuit itself characterized this Court's grave risk finding as "borderline."  (Doc. 77 at 6 (quoting *Radu*, 11 F.4th at 1089).)  And although a grave risk of harm either exists or does not exist for purposes of an Article 13(b) finding, the degree of harm is nevertheless relevant to a court's consideration of ameliorative measures.  *See, e.g.*, *Radu*, 11 F.4th at 1088 (explaining that voluntary commitments or agreements may be sufficient to ameliorate a grave risk of harm, depending "on the severity of risk of harm to the children (which must be low)").

Petitioner criticizes this Court for contacting the United States Department of State for assistance in this matter (Doc. 115 at 11-12.)  But the Ninth Circuit specifically

1  instructed this Court to contact the United States Department of State Office of
2  Children's Issues for assistance. *See Radu*, 11 F.4th at 1088.

3        Finally, Petitioner argues that this Court erred in failing to hold another
4  evidentiary hearing after the Ninth Circuit's second remand of this case and in failing to
5  allow Ms. Mikels-Romero to testify again following her August 26, 2020 testimony.
6  (Doc. 115 at 7-9.) Petitioner argues that a further evidentiary hearing was required
7  because grave risk[3] and ameliorative measures must be assessed in light of present
8  circumstances. (*Id.*) It is true that ameliorative measures should be evaluated "in light of
9  circumstances as they exist in the present." *Gaudin v. Remis*, 415 F.3d 1028, 1036 (9th
10 Cir. 2005), *abrogated on other grounds by Golan v. Saada*, 142 S. Ct. 1880 (2022). But
11 it is also true that when the abduction itself "causes the pangs of subsequent return,"
12 those pangs are not valid concerns under the grave risk exception. *Cuellar v. Joyce*, 596
13 F.3d 505, 511 (9th Cir. 2010) (internal quotation marks omitted). Here, there is no
14 evidence or indication that Petitioner has had any physical contact with his children since
15 Respondent abducted them from Germany in 2019. Respondent points to no changed
16 circumstances concerning Petitioner's treatment of the children that would necessitate a
17 further evidentiary hearing. Furthermore, Respondent has not shown that the United
18 States Supreme Court's decision in *Golan* necessitated a further evidentiary hearing in
19 this Court.[4]

20       Instead, Respondent points to the updated report of Ms. Mikels-Romero
21 concerning her psychological evaluation of O.S.R. Respondent first presented that report
22 to this Court when she filed her Reply in support of her Motion to Stay. At the
23 evidentiary hearing held on November 3, 2021, following the Ninth Circuit's first
24 remand, Respondent indicated only that Ms. Mikels-Romero would testify that it would
25 be traumatic to O.S.R. if Petitioner were to come to Tucson, Arizona in order to take the

---

[3] The Ninth Circuit has not directed this Court to re-consider its grave risk finding. (*See* Docs. 51, 105, 111.)
[4] The Court notes that the district court in *Golan*, upon remand from the United States Supreme Court, issued a decision granting the Hague Petition in that case, without holding a further evidentiary hearing. *See Saada v. Golan*, No. 1:18-CV-5292 (AMD) (RML), 2022 WL 4115032 (E.D.N.Y. Aug. 31, 2022).

children back to Germany. (Doc. 74 at 37-40, 45.) The Court found the proposed testimony unnecessary because the Court was not inclined to allow Petitioner to take the children to Germany himself. (*Id.*) Respondent did not mention Ms. Mikels-Romero in her brief following the Ninth Circuit's second remand. (Doc. 109.) The Court did not err in failing to predict Ms. Mikels-Romero's newly presented, updated report.

Furthermore, even if this Court had allowed Ms. Mikels-Romero to testify at a further evidentiary hearing to the matters stated in her updated report, the testimony would not have changed the Court's decision. The Court found, and has continued to find, a grave risk of psychological harm if the children are returned to Germany in the sole custody of Petitioner.[5] However, Petitioner and Respondent have joint custody rights that are enforceable under German law, and this Court did not find—and would not find, even in light of Ms. Mikels-Romero's updated report—a grave risk of psychological harm if the children are returned to Germany in the joint custody of their parents. Furthermore, as discussed below, Ms. Mikels-Romero's updated report indicates that at least some of O.S.R.'s psychological problems stem from his lack of contact with Petitioner—a lack of contact caused by Respondent's abduction and subsequent actions.

The second factor weighs in favor of a stay because returning to Germany while Respondent's appeal is pending will be disruptive to Respondent and the children. *See Chafin*, 568 U.S. at 178 ("shuttling children back and forth between parents and across international borders may be detrimental to those children"). The fourth factor is neutral, as the public interest favors both the prompt return of wrongfully removed children and the safeguarding of the well-being of children.

The third factor weighs strongly against a stay, even though Respondent's appeal has been expedited. Petitioner has joint custody rights under German law and yet, as a result of Respondent's actions, he has been unable to see his children in over three years. The updated report of Ms. Mikels-Romero states that O.S.R. has repeatedly questioned

---

[5] To the extent Respondent argues that the children would be at grave risk of physical harm if a stay is denied (*see, e.g.*, Doc. 119 at 7), the Court rejects that argument. The Court has never found that the children would be at grave risk of physical harm if returned to Germany. (*See* Doc. 26 at 5.)

why Petitioner does not contact him and why Petitioner is not interested in him or his activities. (Doc. 119-1 at 6.) But the testimony and evidence before this Court indicates that Respondent has interfered with Petitioner's ability to contact his children. (*See, e.g.*, Doc. 75 at 45 (Petitioner testifying that Respondent cut him off from phone contact with his children).) Respondent's interference with Petitioner's ability to see and contact his children has and continues to cause substantial and irreparable injury to Petitioner—and, based on Ms. Mikels-Romero's updated report, appears to be causing injury to O.S.R., as well.

On balance, the relevant factors weigh against granting a stay pending resolution of Respondent's appeal. However, the Court will grant Respondent's alternative request to temporarily stay its Third Return Order until the Ninth Circuit Court of Appeals rules on a timely filed motion to stay. (*See* Doc. 115 at 21.)

Accordingly,

**IT IS ORDERED** that Respondent's Motion to Stay (Doc. 115) is **partially denied**. The Court declines to stay its Third Return Order pending resolution of Respondent's appeal. However, the Third Return Order (Doc. 112) is **temporarily stayed** pending the Ninth Circuit's resolution of a motion to stay timely filed before that Court. Respondent shall notify this Court within **two (2) business days** of the Ninth Circuit's resolution of such a motion. Respondent shall also promptly notify this Court if no such motion is timely filed in the Ninth Circuit.

Dated this 27th day of September, 2022.

_____
Honorable Rosemary Márquez
United States District Judge