**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bogdan Radu,<br><br>            Petitioner,<br><br>v.<br><br>Persephone Johnson Shon,<br><br>            Respondent. | No. CV-20-00246-TUC-RM<br><br>**ORDER** |

On December 1, 2022, the Ninth Circuit Court of Appeals remanded the above-captioned case to this Court on a limited basis for purposes of clarification of this Court's Orders requiring the return of minors O.S.R. and M.S.R. to Germany. (Doc. 121.)

**I.     Procedural Background**

On June 8, 2020, Petitioner Bogdan Radu ("Petitioner") filed a Petition pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("the Convention") and its implementing legislation, the International Child Abduction Remedies Act ("ICARA"). (Doc. 1.) After an evidentiary hearing, this Court issued an Order on September 17, 2020 requiring Respondent Persephone Johnson Shon ("Respondent") to return minor children O.S.R. and M.S.R. to Germany. (Doc. 26.) Pursuant to Article 13(b) of the Convention, the Court found the children would face a grave risk of psychological harm if returned to Germany in the custody of Petitioner and therefore ordered, as an ameliorative measure, that the children be returned in the temporary custody of Respondent. (*Id.* at 5-6).

The Ninth Circuit vacated and remanded for this Court to reasonably ensure compliance with its ameliorative measure. (Doc. 51-1.) On December 30, 2021, after a further evidentiary hearing, this Court again granted the Petition and ordered Respondent to return O.S.R. and M.S.R. to Germany. (Doc. 77.) The Court found that ordering the return of the children in the sole custody of Respondent was not necessary to mitigate a grave risk of psychological harm and that ordering Respondent to return with the children to Germany, where Petitioner and Respondent have joint custody rights, was sufficient. (*Id.* at 6-7.) The Court further found that Respondent would be able to stay in Germany for up to 90 days as a tourist and that Petitioner, if necessary, would commit to purchasing the airfare for O.S.R. and M.S.R.'s return to Germany and to paying rent for a separate residence in Germany for Respondent and the children to live in until a German court makes a custody determination. (*Id*. at 7-8.)

Respondent appealed the December 30, 2021 Order, and the Ninth Circuit remanded for consideration of the recently decided United States Supreme Court case *Golan v. Saada*, __ U.S. __, 142 S. Ct. 1880 (2022), which ruled that a court is not required to consider ameliorative measures upon an Article 13(b) grave-risk finding. (Doc. 99.) On remand, this Court found in its discretion that consideration of ameliorative measures was appropriate in this case and that the ameliorative measures as stated in its December 30, 2021 Order satisfy the standards articulated in *Golan*. (Doc. 112.) Respondent appealed (Doc. 114), and the Ninth Circuit remanded on a limited basis for clarification of the logistics of the children's return (Doc. 121).

**II.     Limited Remand**

The Ninth Circuit has directed this Court to address seven questions:

(a) what, specifically, is the district court's current Article 13(b) grave-risk finding and ameliorative measure(s), (b) whether Radu must pay for the children's airfare, (c) whether Radu must pay for separate living arrangements for the children and Shon, (d) what the custody arrangements for the children will be (sole or joint) while Shon is temporarily residing in Germany, (e) what the custody arrangements for the children will be if Shon is no longer able to legally reside in Germany on a tourist visa before a German court decides custody, (f) whether the parties should notify

German child protective services upon the children's arrival in Germany, and (g) whether, if necessary, German child protective services has jurisdiction to act in overseeing the children's wellbeing while they are present in Germany.

(Doc. 121.)

### A. Article 13(b) Grave-Risk Finding and Ameliorative Measures

Under Article 13(b) of the Convention, a court is not required to return a child if "there is a grave risk that his or her return would expose the child to physical or psychological harm . . ." The respondent must establish a grave-risk defense by clear and convincing evidence. 22 U.S.C. § 9003(e)(2)(A).

The Court's initial September 17, 2020 Order found that O.S.R. and M.S.R. would face a grave risk of psychological harm if returned to Germany in the custody of Petitioner. (Doc. 26 at 5.) The Court later clarified that its grave-risk finding was limited to a situation in which the children were returned in Petitioner's sole custody. (Doc. 77 at 6-7.) The Court also noted that the grave-risk finding in its September 17, 2020 Order considered the risk of harm over a time period longer than the one likely at issue in this case. (*Id.* at 7.) The Court had considered the risk of harm to the children over years given Petitioner's parenting style. However, it is likely that a German court would be able to make a custody determination within months. *See Gaudin v. Remis*, 415 F.3d 1028, 1037 (9th Cir. 2005), *abrogated on other grounds by Golan*, 142 S. Ct. 1880 (grave-risk finding should be based only on time period necessary to obtain custody determination).

The Court now clarifies that its finding under Article 13(b) of the Convention is that O.S.R. and M.S.R. would be at grave risk of psychological harm if they were to return to Germany and remain in the sole custody of Petitioner for an extended period. The Court does not find that the children would be at grave risk of psychological harm if Petitioner and Respondent have joint custody of them in Germany. Furthermore, the Court does not find that the children would be at grave risk of psychological harm if Petitioner has sole custody of them for a limited duration. *See Gaudin*, 415 F.3d at 1037 ("Because psychological harm is often cumulative, especially in the absence of physical abuse or extreme maltreatment, even a living situation capable of causing grave psychological harm

over the full course of a child's development is not necessarily likely to do so during the period necessary to obtain a custody determination.")

Accordingly, the Court orders as an ameliorative measure that Respondent return with O.S.R. and M.S.R. to Germany and remain there on a tourist visa for 90 days, sharing joint custody of the children with Petitioner in Germany while she remains there. Based on the record evidence, the Court finds that a German court will likely be able to make a custody determination within six months of the children's arrival in Germany. Therefore, even if Respondent departs Germany 90 days after the children's arrival, the children would remain in Germany in Petitioner's custody only for a limited duration. Furthermore, by that point, the children will be re-acclimated to life in Germany and to the care of Petitioner. Respondent may attempt to obtain a resident visa to stay with the children in Germany in a joint-custody arrangement until a German court makes a final custody determination. But even if Respondent leaves Germany after 90 days, and even if a German court has not made a final custody determination by the time Respondent departs, the Court finds that requiring Respondent to return with O.S.R. and M.S.R. to Germany remains a sufficient ameliorative measure to mitigate the borderline grave risk of psychological harm that exists in this case.

### B. Cost of Children's Airfare and Living Arrangements

Any court ordering the return of a child pursuant to Convention must order the respondent to pay "transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate." 22 U.S.C. § 9007(b)(3).

At the post-remand evidentiary hearing, Respondent testified that she had only $700 in savings and would be unable to afford plane tickets to Germany or rent in Germany. (Doc. 77 at 3.) The Court did not find that testimony to be entirely credible because it conflicted with other testimony concerning Respondent's employment, lifestyle, and expenses. (*Id.* at 3, 7-8.)

The Court now clarifies that it finds Respondent to be capable of paying for airfare

for herself and the children to return to Germany. Respondent has not shown that ordering her to pay for airfare to Germany is clearly inappropriate. Accordingly, pursuant to 22 U.S.C. § 9007(b)(3), the Court orders Respondent to bear the costs of transporting herself, O.S.R., and M.S.R. back to Germany. However, the Court finds that Respondent has established that she would likely have difficulty paying rent in Germany, since she is eligible only for unpaid leave from her job in Tucson, Arizona, and she would be staying on a tourist visa in Germany without the ability to work there. (*See* Doc. 76 at 13; Doc. 77 at 3.) Accordingly, the Court orders Petitioner to pay the costs for a separate residence for Respondent—and the children when they are in Respondent's care—to live in while Respondent is in Germany, until a German court makes a final custody determination or for 90 days, whichever time period is shorter.

### C. Custody Arrangements in Germany

As discussed above, the Court's ameliorative measure requires Respondent to return with O.S.R. and M.S.R. to Germany. Once in Germany, Petitioner and Respondent will have joint custody of the children pursuant to German law, until a German court makes a custody determination. (Doc. 77 at 8; Doc. 112 at 4; Doc. 120 at 4).

If Respondent's tourist visa expires before a German court makes a custody determination, and Respondent has been unable to obtain a resident visa by that time, then Petitioner will have custody of the children after Respondent departs and until a German court makes a custody determination.

### D. Notification of German Child Protective Services

Respondent may choose to notify Germany's child protective services upon her arrival in Germany, and she may also choose to notify any other agencies available to assist her with initiating custody proceedings or obtaining counseling services for the children. However, the Court declines to order Respondent to notify any agencies, as it does not find such an order to be necessary under the circumstances.

### E. Jurisdiction of German Child Protective Services

The Convention is premised on a recognition that "courts in contracting states" will

"decide what is in the child's best interests . . . in a responsible manner." *Abbott v. Abbott*, 560 U.S. 1, 20 (2010). The principles of comity underlying the Hague Convention favor respecting contracting states' ability to ensure the protection of children within their borders.

The Court finds that the existence of the German equivalent of child protective services, *jugendamt*, is supported by the evidence of record and is also an appropriate matter for judicial notice. The Court also finds, based on the record evidence, that there is no reason to doubt that Germany's child protective services would have authority to ensure the children's safety if necessary while the children are living in Germany. It does not appear that a further evidentiary hearing is within the scope of the Ninth Circuit's limited remand. However, this Court will hold an evidentiary hearing on this issue if instructed to do so by the Ninth Circuit.

**IT IS ORDERED** that the Clerk of Court is directed to forward a copy of this Order to the Clerk of the Ninth Circuit Court of Appeals.

Dated this 9th day of January, 2023.

_____
Honorable Rosemary Márquez
United States District Judge